**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELUXE ENTERTAINMENT SERVICES GROUP INC., *et al.*,[1] | ) | Case No. 19-23774 (RDD) |
| | ) | |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507
(I) AUTHORIZING DEBTORS TO OBTAIN SENIOR SECURED PRIMING
SUPERPRIORITY POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH
COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE
PROTECTION, (IV) MODIFYING AUTOMATIC STAY, (V) SCHEDULING FINAL
HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the motion, dated October 4, 2019 (the "**DIP Motion**"),[2] of the above-captioned

debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter

11 cases (collectively, together with any Successor Cases (as defined below), the "**Chapter 11**

**Cases**"), seeking entry of an interim order (together with all annexes, schedules and exhibits

hereto, this "**Interim Order**"), pursuant to sections 105, 361, 362, 363, 364(c), 364(d), 364(e)

and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy**

**Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern

District of New York (the "**Local Rules**"), *inter alia*:

---

[1]       The last four digits of Debtor Deluxe Entertainment Services Group Inc.'s tax identification number are 1725.  Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/deluxe.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1014, White Plains, New York, 10606.

[2]       Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the applicable DIP Loan Documents (as defined herein).

(1)    authorizing the Debtors to obtain postpetition financing on a priming senior secured superpriority basis in an aggregate principal amount not to exceed $115 million (the "**DIP Facility**"), in the form of a new-money term loan facility, of which (x) approximately $55 million in aggregate principal amount shall be borrowed by the Debtors in a single draw to be made by the Debtors on the Closing Date (as defined in the DIP Loan Agreement), and (y) following entry of the Final Order (as defined below), an additional $60 million in aggregate principal amount shall be borrowed by the Debtors in a single draw to be made by the Debtors, in each case, pursuant to the terms and conditions of this Interim Order and that certain *Senior Secured Priming and Superpriority Debtor-In-Possession Credit Agreement*, substantially in the form attached to this Interim Order as **Annex C** (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, and together with all schedules, annexes and exhibits thereto, the "**DIP Loan Agreement**", together with all other agreements, documents (including any and all security, collateral, guarantee and other agreements), instruments and certificates executed and/or delivered in connection therewith, including without limitation, all "Loan Documents" as defined in the DIP Loan Agreement, each as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Loan Agreement, the "**DIP Loan Documents**"), by and among Deluxe Entertainment Services Group Inc., as borrower (the "**DIP Borrower**"), DX Holdings LLC ("**DX Holdings**") and each of the other Debtors and non-Debtor subsidiaries of DX Holdings who are guarantors from time to time under the DIP Loan Documents, as guarantors (each, a "**DIP Guarantor**", and collectively, the "**DIP Guarantors**", and together with the DIP Borrower, the "**DIP Loan Parties**"), Credit Suisse AG, as administrative and collateral agent (in such capacities, the "**DIP Agent**"), the initial lenders party thereto (collectively, the "**Initial DIP Lenders**", and together with any additional lenders that become a party thereto from time to time in accordance with the terms thereof, the "**DIP Lenders**", and together with the DIP Agent, the "**DIP Secured Parties**");

(2)    authorizing the DIP Loan Parties to incur, guarantee (as applicable) on a joint and several basis, and pay the principal, interest, premiums, fees, expenses and all other amounts (including without limitation, all "Obligations" as defined in the DIP Loan Agreement) that may be due, as and when payable, under the DIP Loan Documents (collectively, the "**DIP Obligations**");

(3)    authorizing the DIP Loan Parties to execute, deliver and to perform under the DIP Loan Documents, and to perform such other and further acts as may be necessary or desirable in connection with this Interim Order, the DIP Loan Documents, and the transactions contemplated hereby and thereby;

(4)    authorizing the indefeasible payment in full in cash of all Senior Priming Term Loan Obligations (as defined below), subject to paragraph 31 hereof;

(5)    granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, and authorizing the DIP Loan Parties to incur, the DIP Liens (as defined below) in all DIP Collateral (as defined below), in each case, in accordance with and subject to the relative priorities set forth herein;

2

(6)    granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, and authorizing the DIP Loan Parties to incur, allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations;

(7)    authorizing the Debtors' use of Prepetition Collateral (as defined below), including Cash Collateral (as defined below), as well as the proceeds of the DIP Facility, solely in accordance with the Approved Budget (as defined below), subject to Permitted Variances (as defined below), and subject to the terms and conditions set forth in this Interim Order and the DIP Loan Documents;

(8)    providing adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against the risk of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (including Cash Collateral);

(9)    modifying or vacating the automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, and providing for the immediate effectiveness of this Interim Order;

(10)    waiving the Debtors' right to surcharge the DIP Collateral and, subject to this Court's approval at the Final Hearing, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and waiving the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)    authorizing the Debtors to cause and/or require the other DIP Loan Parties to become parties to the DIP Loan Documents as and to the extent required by the DIP Loan Documents, and to grant any liens and perform all DIP Obligations, and to submit to the jurisdiction of this Court with regard to any and all disputes regarding the DIP Loan Documents or this Interim Order; and

(12)    scheduling a final hearing (the "**Final Hearing**") to consider entry of a final order authorizing the relief requested in the DIP Motion on a final basis, which order shall be in form and substance and on terms acceptable in all respects to the Required DIP Lenders (as defined in the DIP Loan Agreement) and the Required ABL Lenders (as defined in the ABL Loan Agreement as "Required Lenders") (the "**Final Order**"), and approving the form of notice with respect to the Final Hearing.

The Court having reviewed the DIP Motion, the DIP Loan Documents on file with the

Court, the *Declaration of John Eric "Eric" Cummins, Executive Vice President and Chief*

*Financial Officer of Deluxe Entertainment Services Group Inc., (I) in Support of Chapter 11*

*Petitions and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2*

(the "**First Day Declaration**") and any exhibits thereto, the *Declaration of James H. Baird in*

3

*Support of the Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief in Support of the DIP Motion* (the "**DIP Declaration**"); and upon the evidence, representations and arguments proffered or adduced at the hearing held before this Court on October 4, 2019 (the "**Interim Hearing**"), and upon the record of these Chapter 11 Cases; and adequate notice of the DIP Motion's request for interim relief and of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

## IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]

A. ***Chapter 11 Cases.*** On October 3, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, White Plains Division (this "**Court**") commencing these Chapter 11 Cases.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      *Debtors-in-Possession*.    The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.  As of the date hereof, the United States Trustee (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases (together with any statutory committee that may appointed or formed in the Chapter 11 Cases or any Successor Cases the "**Official Committee**").

C.      *Jurisdiction and Venue*.    The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), over these proceedings and the persons and property affected thereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2) and 1334.  Venue for these Chapter 11 Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rules 2002-1(b), 4001-2, 9006-1 and 9013-1.

D.      *Debtors' Stipulations*.    In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Term Loan Liens (as defined below) and the consent of the Prepetition Secured Parties to usage of Cash Collateral, the Debtors, for themselves, but subject to paragraph 31 hereof, not their estates, hereby admit, stipulate, acknowledge and agree to the following:

(i)      *Junior Term Loans*

(a)      **Junior Prepetition Term Loan Facility.**  Pursuant to the *Fifth Amended and Restated Credit Agreement* dated as of July 31, 2019 (as amended on September 19, 2019, and as further amended, supplemented or modified prior to the

Petition Date, the "**Junior Term Loan Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, including, without limitation, the Junior Term Loan Guarantee and Collateral Agreement (as defined below) and the Priming Term Loan Intercreditor Agreement (as defined below), the "**Junior Term Loan Documents**"), by and among Deluxe Entertainment Services Group Inc. ("**DESG**"), as borrower, DX Holdings, Credit Suisse AG, as administrative agent and collateral agent (the "**Junior Term Loan Agent**"), and the lenders party thereto from time to time (collectively, the "**Junior Term Loan Lenders**", and together with the Junior Term Loan Agent, the "**Junior Term Loan Secured Parties**"), the Junior Term Loan Lenders provided a term loan facility to DESG.  Pursuant to the *Second Amended and Restated Term Loan Guarantee and Collateral Agreement* dated as of July 31, 2019 (as amended, supplemented or modified prior to the Petition Date, the "**Junior Term Loan Guarantee and Collateral Agreement**"), by and among DX Holdings, DESG, the Subsidiary Guarantors and Grantors from time to time party thereto, including additional guarantors that executed assumption agreements thereto (collectively, together with DX Holdings, the "**Junior Term Loan Guarantors**", and together with DESG, the "**Junior Term Loan Parties**"), and the Junior Term Loan Agent, the Junior Term Loan Guarantors jointly and severally, unconditionally and irrevocably, guaranteed the Junior Term Loan Obligations (as defined below).

(b)     **Junior Term Loan Obligations.**  As of the Petition Date, without defense, counterclaim, or offset of any kind, the Junior Term Loan Parties were jointly and severally indebted and liable to the Junior Term Loan Secured Parties in the aggregate principal amount of at least $783.5 million, plus accrued but unpaid interest, plus any other amounts, including, without limitation, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, and any other charges, amounts, liabilities, obligations and costs of whatever nature, whether or not contingent, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, including all "Obligations" as defined in the Junior Term Loan Agreement, in each case, as and to the extent provided in the Junior Term Loan Documents (collectively, the "**Junior Term Loan Obligations**").

(c)     **Junior Term Loan Collateral.**  To secure the Junior Term Loan Obligations, the Junior Term Loan Parties granted to the Junior Term Loan Agent, for the benefit of itself and the Junior Term Loan Lenders, properly perfected continuing liens, mortgages on and security interests in (collectively, the "**Prepetition Junior Term Loan Liens**") all "Collateral" as defined in the Junior Term Loan Agreement (collectively, the "**Prepetition Junior Term Loan Collateral**") it being understood that the Prepetition Junior Term Loan Collateral does not include any property or assets that have been expressly excluded from the definition of "Collateral" in the Junior Term Loan Agreement, in each case, subject to the relative rankings and priorities set forth in the ABL Intercreditor Agreement and the Priming Term Loan Intercreditor Agreement (each as defined below).

(ii)   ***Priming Term Loans.***

(a)   **Priming Term Loan Facility.**  Pursuant to the *Senior Secured Priming Delayed Draw Term Loan Credit Agreement* dated as of July 31, 2019 (as amended on September 19, 2019, and as further amended, supplemented or modified prior to the Petition Date, the "**Priming Term Loan Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including, without limitation, the Priming Term Loan Guarantee and Collateral Agreement (as defined below), and the Priming Term Loan Intercreditor Agreement, collectively, the "**Priming Term Loan Documents**"), among DESG, as borrower, DX Holdings, Credit Suisse AG, as administrative agent and collateral agent (the "**Priming Term Loan Agent**"), and the lenders party thereto from time to time (collectively, the "**Priming Term Loan Lenders**", and together with the Priming Term Loan Agent, the "**Priming Term Loan Secured Parties**"), the Priming Term Loan Lenders provided a priming term loan facility to DESG.  Pursuant to the *Priming Term Loan Guarantee and Collateral Agreement* dated as of July 31, 2019 (as amended, supplemented or modified prior to the Petition Date, the "**Priming Term Loan Guarantee and Collateral Agreement**"), by and among DX Holdings, DESG, the Subsidiary Guarantors and Grantors from time to time party thereto, including additional guarantors that executed assumption agreements thereto (collectively, together with DX Holdings, the "**Priming Term Loan Guarantors**", and together with DESG, the "**Priming Term Loan Parties**"), and the Priming Term Loan Agent, the Priming Term Loan Guarantors jointly and severally, unconditionally and irrevocably, guaranteed the Priming Term Loan Obligations (as defined below).

(b)   **Priming Term Loan Obligations.**  As of the Petition Date, without defense, counterclaim, or offset of any kind, the Priming Term Loan Parties were jointly and severally indebted and liable to the Priming Term Loan Secured Parties in the aggregate principal amount of at least $73 million, plus any other amounts, including, without limitation, accrued and unpaid interest, premiums (including amounts due under the Applicable Premium (as defined in the Priming Term Loan Agreement)), any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, and any other charges, amounts, liabilities, obligations and costs of whatever nature, whether or not contingent, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, including all "Obligations" as defined in the Priming Term Loan Agreement, in each case, as and to the extent provided in the Priming Term Loan Documents (collectively, the "**Priming Term Loan Obligations**").

(c)   **Priming Term Loan Collateral.**  To secure the Priming Term Loan Obligations, the Priming Term Loan Parties granted to the Priming Term Loan Agent, for the benefit of itself and the Priming Term Loan Lenders, properly perfected continuing priming liens, mortgages on and security interests in (collectively, the "**Prepetition Priming Term Loan Liens**") all "Collateral" as defined in the Priming Term Loan Agreement (collectively, the "**Prepetition Priming Term Loan Collateral**"), it being understood that the Prepetition Priming Term Loan Collateral does

7

not include any property or assets that have been expressly excluded from the definition of "Collateral" in the Priming Term Loan Agreement, in each case, subject to the relative rankings and priorities set forth in the Intercreditor Agreements (as defined below).

(iii) *Senior Priming Term Loan*

(a) **Senior Priming Term Loan Facility.** Pursuant to the *Super Secured Super Priming Term Loan Credit Agreement* dated as of September 19, 2019 (as amended, supplemented or modified prior to the Petition Date, the "**Senior Priming Term Loan Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, including, without limitation, the Senior Priming Term Loan Guarantee and Collateral Agreement (as defined below) and the Senior Priming Intercreditor Agreement (as defined below), the "**Senior Priming Term Loan Documents**", and together with the Priming Term Loan Documents and the Junior Term Loan Documents, the "**Prepetition Term Loan Documents**"), among DESG, as borrower, DX Holdings, Credit Suisse AG, as administrative agent and collateral agent (the "**Senior Priming Term Loan Agent**"), and the lenders party thereto from time to time (collectively, the "**Senior Priming Term Loan Lenders**", and together with the Term Loan Agent, the "**Senior Priming Term Loan Secured Parties**", and together with the Priming Term Loan Secured Parties and the Junior Term Loan Secured Parties, the "**Prepetition Term Loan Secured Parties**"), the Senior Priming Term Loan Lenders provided a senior priming term loan facility to DESG. Pursuant to the *Super Priming Term Loan Guarantee and Collateral Agreement* dated as of September 19, 2019 (as amended, supplemented or modified prior to the Petition Date, the "**Senior Priming Term Loan Guarantee and Collateral Agreement**"), by and among DX Holdings, DESG, the Subsidiary Guarantors and Grantors from time to time party thereto, including additional guarantors that executed assumption agreements thereto (collectively, together with DX Holdings, the "**Senior Priming Term Loan Guarantors**", and together with DESG, the "**Senior Priming Term Loan Parties**"), and the Senior Priming Term Loan Agent, the Senior Priming Term Loan Guarantors jointly and severally, unconditionally and irrevocably, guaranteed the Senior Priming Term Loan Obligations.

(b) **Senior Priming Term Loan Obligations.** As of the Petition Date, without defense, counterclaim, or offset of any kind, the Senior Priming Term Loan Parties were jointly and severally indebted and liable to the Senior Priming Term Loan Secured Parties in the aggregate principal amount of at least $10 million, plus accrued but unpaid interest as of the Petition Date, plus any other amounts, including, without limitation, accrued and unpaid interest (including at the default rate), premiums (including amounts due under the Applicable Premium (as defined in the Senior Priming Term Loan Agreement)), any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, and any other charges, amounts, liabilities, obligations and costs of whatever nature, whether or not contingent, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, including all "Obligations" as defined in the Senior Priming Term Loan Agreement, in each case, as and to the extent provided in the Senior Priming Term Loan

8

Documents (collectively, the "**Senior Priming Term Loan Obligations**", and together with the Priming Term Loan Obligations and the Junior Term Loan Obligations, the "**Prepetition Term Loan Obligations**").

(c)     **Senior Priming Term Loan Collateral.**  To secure the Senior Priming Term Loan Obligations, the Senior Priming Term Loan Parties granted to the Senior Priming Term Loan Agent, for the benefit of itself and the Senior Priming Term Loan Lenders, properly perfected continuing liens, mortgages on and security interests in (collectively, the "**Prepetition Senior Priming Term Loan Liens**", and together with the Prepetition Priming Term Loan Liens and the Prepetition Junior Term Loan Liens, the "**Prepetition Term Loan Liens**") all "Collateral" as defined in the Senior Priming Term Loan Agreement (collectively, the "**Prepetition Senior Priming Term Loan Collateral**"), it being understood that the Prepetition Senior Priming Term Loan Collateral does not include any property or assets that have been expressly excluded from the definition of "Collateral" in the Senior Priming Term Loan Agreement, in each case, subject to the relative rankings and priorities set forth in the Intercreditor Agreements.

(iv)   *ABL Loan Facility*

(a)     **ABL Loan Facility.**  Pursuant to the *Third Amended and Restated Asset-Based Revolving Credit Agreement*, dated as of July 31, 2019 (as amended on September 19, 2019, and as further amended, supplemented or modified prior to the Petition Date, the "**ABL Loan Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, including, without limitation, the ABL Guarantee and Collateral Agreement (as defined below), the ABL Intercreditor Agreement, the "**ABL Loan Documents**"), among DESG, as borrower, DX Holdings, Credit Suisse AG, as administrative agent (the "**ABL Loan Administrative Agent**"), Bank of America, N.A., as collateral agent (the "**ABL Loan Collateral Agent**", and together with the ABL Loan Administrative Agent, the "**ABL Loan Agents**"; the ABL Loan Agents, together with the Junior Term Loan Agent, the Priming Term Loan Agent and the Senior Priming Term Loan Agent, the "**Prepetition Agents**"), and the lenders party thereto from time to time (collectively, the "**ABL Loan Lenders**", and together with the ABL Loan Administrative Agent and the ABL Loan Collateral Agent, the "**ABL Loan Secured Parties**"), the ABL Loan Lenders provided an asset-based revolving credit facility to the ABL Loan Parties (the "**ABL Loan Facility**").  Pursuant to the *Second Amended and Restated ABL Guarantee and Collateral Agreement* dated as of July 31, 2019 (as amended, supplemented or modified prior to the Petition Date, the "**ABL Guarantee and Collateral Agreement**"), by and among DX Holdings, DESG, the Subsidiary Guarantors and Grantors from time to time party thereto, including additional guarantors that executed assumption agreements thereto (collectively, together with DX Holdings, the "**ABL Loan Guarantors**", and together with DESG, the "**ABL Loan Parties**"), and the ABL Loan Collateral Loan Agent, the ABL Loan Guarantors jointly and severally, unconditionally and irrevocably, guaranteed the ABL Loan Obligations (as defined below).

(b)     **ABL Loan Obligations.**  As of the Petition Date, without defense, counterclaim, or offset of any kind, the ABL Loan Parties were jointly and severally

indebted and liable to the ABL Loan Secured Parties in the aggregate principal amount of $56.35 million,[4] plus any other amounts, including, without limitation, accrued and unpaid interest (including at the default rate), any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), treasury, cash management and derivative obligations, indemnification obligations, and any other charges, amounts, liabilities, obligations and costs of whatever nature, whether or not contingent, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, including all "Obligations" as defined in the ABL Loan Agreement, in each case as and to the extent provided in the ABL Loan Documents (collectively, the "**ABL Loan Obligations**").

(c)    **ABL Loan Collateral.**  To secure the ABL Loan Obligations, the ABL Loan Parties granted to the ABL Loan Collateral Agent, for the benefit of itself and the ABL Loan Lenders, properly perfected continuing liens, mortgages on and security interests in (collectively, the "**Prepetition ABL Loan Liens**") all "Collateral" as defined in the ABL Loan Agreement (collectively, the "**Prepetition ABL Loan Collateral**"), it being understood that the Prepetition ABL Loan Collateral does not include any property or assets that have been expressly excluded from the definition of "Collateral" in the ABL Loan Agreement, in each case, subject to the relative rankings and priorities set forth in the ABL Intercreditor Agreement.

(v)    *Intercreditor Agreements.*

(a)    The relative rights and remedies of the (i) the Senior Priming Term Loan Secured Parties, the Priming Term Loan Secured Parties, the Junior Term Loan Secured Parties and the ABL Loan Secured Parties (collectively, the "**Prepetition Secured Parties**"), and (ii) the relative priority of their respective security interests in any shared or common prepetition collateral constituting Prepetition Junior Term Loan Collateral, Prepetition Priming Term Loan Collateral, Prepetition Senior Priming Term Loan Collateral and Prepetition ABL Loan Collateral (collectively, "**Prepetition Collateral**"), respectively, are governed by the following intercreditor agreements:

(1)    the Super Priming Term Loan Intercreditor Agreement dated as of September 19, 2019, and as further amended, supplemented or modified prior to the Petition Date (the "**Senior Priming Intercreditor Agreement**"), among DESG, as a Grantor (as defined therein), each Other Senior Lien Representative from time to time party thereto (as defined therein), each Other Junior Lien Representative from time to time party thereto (as defined therein), the Senior Priming Term Loan Agent, the Priming Term Loan Agent and the other Grantors from time to time party thereto;

(2)    the Amended and Restated Term Loan Intercreditor Agreement dated as of September 19, 2019, and as further amended, supplemented or

---

[4]    For the avoidance of doubt, such amount is exclusive of issued letters of credit and purchase card obligations.

modified prior to the Petition Date (the "**Priming Term Loan Intercreditor Agreement**"), among DESG, as a Grantor (as defined therein), each Other Senior Lien Representative from time to time party thereto (as defined therein), each Other Junior Lien Representative from time to time party thereto (as defined therein), the Senior Priming Term Loan Agent, the Priming Term Loan Agent, the Term Loan Agent and the other Grantors from time to time party thereto; and

(3)     the Third Amended and Restated ABL Intercreditor Agreement dated as of September 19, 2019, and as further amended, supplemented or modified prior to the Petition Date (the "**ABL Intercreditor Agreement**", and together with the Senior Priming Intercreditor Agreement and the Priming Term Loan Intercreditor Agreement, the "**Intercreditor Agreements**"), among DESG, as borrower, DX Holdings, the subsidiaries of DESG party thereto, the ABL Loan Collateral Agent, the Senior Priming Term Loan Agent, the Priming Term Loan Agent, the Junior Term Loan Agent and each Other Term Loan Agent (as defined therein) from time to time party thereto.

(b)     Pursuant to section 510(a) of the Bankruptcy Code, each of the Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (as defined below), shall (i) remain in full force and effect, (ii) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Secured Parties and the DIP Secured Parties, respectively, and (iii) not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Loan Documents, unless expressly set forth herein or therein.

(vi)     **Validity and Enforceability of Prepetition Liens.**     Each of the Prepetition Senior Priming Term Loan Liens, the Prepetition Priming Term Loan Liens, the Prepetition Junior Term Loan Liens and the Prepetition ABL Loan Liens (collectively, the "**Prepetition Liens**"), respectively, have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable and perfected liens in the Prepetition Collateral securing the applicable facility, respectively, with priority over any and all other liens in the Prepetition Collateral securing the applicable facility, subject only to (x) pre-existing liens expressly permitted under the Senior Priming Term Loan Documents, the Priming Term Loan Documents, the Junior Term Loan Documents and the ABL Loan Documents (collectively, the "**Prepetition Loan Documents**"), respectively, solely to the extent such liens were senior to the respective Prepetition Liens and such permitted senior liens were existing, valid, enforceable, properly perfected and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code against any of the DIP Loan Parties, the "**Permitted Prior Senior Liens**")[5] and (y) the relative rights and priorities set forth in the Intercreditor Agreements

---

[5]     Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Senior Liens are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties or any Official Committee to challenge the validity, priority, enforceability, seniority, avoidability,

(as applicable).  The Prepetition Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or other claim, cause of action or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise. The Prepetition Liens were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(vii)    **Validity and Enforceability of Prepetition Obligations.**  The Senior Priming Term Loan Obligations, the Priming Term Loan Obligations, the Junior Term Loan Obligations and the ABL Loan Obligations (collectively, the "**Prepetition Obligations**"), respectively, and the Prepetition Loan Documents, respectively, (a) are legal, valid, binding and enforceable against each of the Senior Priming Term Loan Parties, the Priming Term Loan Parties, the Junior Term Loan Parties and the ABL Loan Parties (collectively, the "**Prepetition Loan Parties**"), respectively (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or any other claim, cause of action or challenge of any kind or nature whatsoever, whether  under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.  Any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Secured Parties prior to the Petition Date were proper and not subject to avoidance, disgorgement, recharacterization, disallowance or any other claim, cause of action or challenge of any kind or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(viii)    **No Control.** None of the DIP Secured Parties nor the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Loan Documents and/or the Prepetition Loan Documents.

(ix)    **Release.**  To the best of the Debtors' knowledge, as of the date of this Interim Order, there exist no claims or causes of action against any of the DIP Secured Parties or any of the Prepetition Secured Parties.  The Debtors, on behalf of themselves and their respective estates, hereby forever and irrevocably discharge release the DIP Secured Parties and the Prepetition Secured Parties and each of their respective former, current and future officers, directors, employees, shareholders, owners, members, managers, partners, subsidiaries, affiliates, funds or managed accounts, agents, advisors,

---

perfection or extent of any such Permitted Prior Senior Liens and/or security interests (subject to the terms of this Interim Order).  For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Senior Lien. Any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, the DIP Liens and the DIP Collateral as such claims had with respect to the Prepetition Liens in the Prepetition Collateral.

attorneys, accountants, investment bankers, consultants and other representatives, together with each of their predecessors and successors in interest (collectively, the "**Releasees**") from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations (including, attorneys' fees), costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, recharacterization, subordination, avoidance, any claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or any other claim or cause of action arising under the Bankruptcy Code or applicable non-bankruptcy law), including, without limitation, any claim or cause of action arising under, in connection with, or related to the Debtors or their estates, the extent, amount, validity, enforceability, priority, security and perfection of any of the DIP Facility, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents and/or the transactions contemplated thereunder, or any and all other acts, omissions or events occurring prior to entry of this Interim Order.

(x)     **Cash Collateral.**  All of the Debtors' cash, whether existing on or after the Petition Date or thereafter, wherever located (including, without limitation, all cash in any deposit accounts of the Debtors), whether as original collateral or proceeds of other Prepetition Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(xi)     **Default.**  The Prepetition Loan Parties are in default under the Prepetition Loan Documents, including as a result of the Chapter 11 Cases, and an event of default has occurred under the Prepetition Loan Documents.

E.     ***Findings Regarding Corporate Authority.*** Each DIP Loan Party has all requisite corporate power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

F.     ***Findings Regarding Postpetition Financing and Use of Cash Collateral.***

(i)     *Request for Postpetition Financing.*  The DIP Loan Parties seek authority to enter into the DIP Facility and use Cash Collateral, in each case, on the terms described herein and in the DIP Loan Documents, in order to administer the Chapter 11 Cases and fund the operation of their businesses.  At the Final Hearing, the Debtors will seek final approval of the

DIP Loan Documents, the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to the Final Order, and notice of the Final Hearing and the Final Order will be provided in accordance with this Interim Order. Good cause has been shown for the entry of this Interim Order.

(ii)    *Immediate Need for Postpetition Financing and Use of Cash Collateral.* The Debtors' need to use Cash Collateral on an interim basis and to obtain credit pursuant to the DIP Facility as provided for herein on an interim basis is immediate and necessary to avoid serious and irreparable harm to the Debtors, their estates, their creditors and other parties-in-interest, and to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral. Without the ability to access the Interim Financing (as defined below) and the DIP Facility, and without authority to use Cash Collateral, the Debtors, their estates and their creditors would suffer immediate and irreparable harm, and the Debtors' chances for a successful reorganization would be jeopardized. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and without authority to use Cash Collateral.

(iii)    *No Credit Available on More Favorable Terms.* The Debtors have been unable to obtain financing from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain adequate unsecured credit allowable as an administrative expense under

section 503(b)(1) of the Bankruptcy Code.  The Debtors also have been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Postpetition financing is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders:  (1) the DIP Liens on all DIP Collateral, as set forth herein, (2) the DIP Superpriority Claim, and (3) the other protections set forth in this Interim Order.  After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(iv)    *Use of Proceeds of the DIP Facility and Cash Collateral.*  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the consent to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), the DIP Agent and the DIP Lenders require, and the DIP Loan Parties have agreed, that Cash Collateral and the proceeds of the DIP Facility shall be used solely in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents, and only for the expenditures set forth in and permitted by the Approved Budget, and for no other purpose.  The repayment in full in cash of the outstanding Senior Priming Term Loan Obligations upon the Closing Date is necessary because the Senior Priming Term Loan Lenders, the Priming Term Loan Lenders and the Junior Term Loan Lenders (collectively, the "**Prepetition Term Loan Lenders**", and together with the ABL Loan Lenders, the "**Prepetition Lenders**") would not have otherwise provided the DIP Facility or consented to the subordination of their Prepetition Term Loan Liens

15

to the DIP Liens, and the Prepetition Secured Parties would not have otherwise consented to the DIP Loan Parties' use of their Prepetition Collateral (including Cash Collateral).

(v)      *Adequate Protection*.  The Prepetition Term Loan Lenders have consented to the subordination of their Prepetition Term Loan Liens to the DIP Liens, and the Prepetition Secured Parties have agreed to permit the Debtors' use of Prepetition Collateral (including Cash Collateral), in each case, in accordance with and subject to the terms hereof, the Approved Budget and the DIP Loan Documents.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection, as and to the extent set forth in this Interim Order, against the risk of diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, (a) the use, sale or lease by the Debtors (or other decline in value) of such collateral, (b) the market value decline of such collateral, (c) the imposition of the DIP Liens and the priming (solely to the extent provided for herein) of the Prepetition Liens, (d) the imposition of the Carve-Out (defined below), and (e) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Diminution in Value**").

(vi)      *New Loan*.  The DIP Facility (including the Interim Financing) constitutes new loans and financial accommodations from the DIP Lenders to the DIP Loan Parties, separate and distinct from the loans and financial accommodations provided prior to the Petition Date under the Prepetition Loan Documents, and the proceeds of the DIP Facility may only be borrowed, and such proceeds and Cash Collateral may only be used, in compliance with this Interim Order, the Approved Budget and the DIP Loan Documents.

(vii)      *Sections 506(c) and 552(b)*.  As a material inducement to the DIP Secured Parties to agree to provide the DIP Facility, and in exchange for (a) the DIP Secured Parties'

16

agreement to subordinate their liens and superpriority claims to the Carve-Out (defined below), (b) the Prepetition Term Loan Secured Parties' agreement to subordinate their Prepetition Liens to the DIP Liens, the DIP Superpriority Claim (as defined below) and the Carve-Out, and (c) the Prepetition Term Loan Secured Parties' and the ABL Loan Secured Parties' agreement to consent to the use of Cash Collateral, in each case, in accordance with and subject to the Approved Budget, the DIP Loan Documents and this Interim Order, each of the DIP Secured Parties and the Prepetition Secured Parties have required the Debtors to seek this Court's approval at the Final Hearing of, (1) a waiver of any "equities of the case" exceptions or claims under Section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of Section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the DIP Agent and the DIP Lenders that Section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to section 364 of the Bankruptcy Code).

(viii)    *Good Faith of the DIP Agent and the DIP Lenders*.  The DIP Agents and the DIP Lenders have indicated a willingness to provide postpetition financing to the Debtors subject to, among other things:  (a) the entry by the Court of this Interim Order and the Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by the Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending postpetition credit to the Debtors pursuant to the DIP Loan Documents and this Interim Order in good faith, and that the DIP Agents' and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any

subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ix)    *Business Judgment and Good Faith Pursuant to Section 364(e).*   The extension of credit under the DIP Facility and the DIP Loan Documents, the fees and other amounts paid and to be paid thereunder, and the Cash Collateral arrangements described therein and herein (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and fair consideration.  The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) were negotiated in good faith and at arms' length among the DIP Loan Parties, the DIP Secured Parties and the Prepetition Secured Parties.  The use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

(x)    *Notice*.   Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties-in-interest, including:  (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of their thirty (30) largest unsecured creditors; (v) counsel to the DIP Agent and counsel to the DIP Lenders; (vi) counsel to each of the Prepetition Agents; (vii) all other known parties with liens of record on assets of the Debtors as

of the Petition Date; (viii) all financial institutions at which the Debtors maintain deposit accounts; (x) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 and Local Rules 2002-1, 4001-2 and 9013-1 or requesting to receive notice prior to the date hereof.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances, and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

(xi)    *Relief Essential; Necessity of Immediate Entry*.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.  The Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates, and is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and properties.

**NOW THEREFORE,** based upon the foregoing findings and conclusions, the DIP Motion, the First Day Declaration, the DIP Declaration and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    **DIP Motion Approved.**  The DIP Motion is granted on an interim basis, and the Interim Financing (as defined below) is authorized and approved, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Loan Documents. Any objections to the DIP Motion or to the entry of this Interim Order that have not been

withdrawn, waived, or settled, and all reservation of rights included therein, are hereby overruled on the merits.

2.      **Authorization of DIP Facility.**   The Debtors are hereby expressly and immediately authorized and empowered (and to cause the other DIP Loan Parties to the extent permitted under applicable law), (a) to establish the DIP Facility, (b) to enter into the DIP Loan Documents and to borrow, incur, guarantee (as applicable), provide security for, and pay the DIP Obligations in accordance with and subject to the terms of this Interim Order and the DIP Loan Documents, (c) to execute and/or deliver and perform under any and all DIP Loan Documents and all other instruments, certificates, agreements and documents, and (d) to take any and all other actions, which may be reasonably necessary or required, or otherwise requested by the DIP Agent or the Required DIP Lenders, for the performance by the DIP Loan Parties under the DIP Loan Documents and the implementation of any of the transactions contemplated by the DIP Loan Documents or this Interim Order.  Without limiting the foregoing, the Debtors are hereby authorized and empowered to pay, in accordance with this Interim Order, the principal, interest, costs, fees, payments, indemnities, expenses and other amounts provided in the DIP Loan Documents, including, without limitation, all closing fees, unused line fees, arrangement fees, structuring fees, duration fees, commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, servicing fees, liquidator fees, administrative agent's fees, prepayment premiums or similar amounts (including, without limitation, any amounts due under the *Payments Letter*, dated October 2, 2019, by and between DESG and signatories thereto, a copy of which is annexed hereto as **Annex D**, and the *Deluxe Entertainment Services Group Inc. Senior Secured Super-Priority Debtor-In-Possession Term Loan Facility Fee Letter*, dated October 3, 2019, by and between DESG and the Commitment Parties (as defined therein) (together, the "**Payment**

20

Letters")), the fees and disbursements of the DIP Agent and the DIP Lenders (including the fees

and expenses of (a) Stroock & Stroock & Lavan LLP ("**Stroock**"), as counsel, and FTI

Consulting Group ("**FTI**"), as financial advisor, to the Initial DIP Lenders, and any other advisor

or consultant retained by the Initial DIP Lenders (collectively, the "**DIP Lender Professionals**"),

and (b) Cravath, Swaine & Moore LLP, as lead counsel ("**Cravath**"), and Norton Rose

Fulbright, as local UK counsel ("**Norton Rose**"), to the DIP Agent (including any successor or

replacement agent or counsel), and all other DIP Obligations, in each case, whether or not such

fees arose before or after the Petition Date, and whether or not the transactions contemplated

hereby are consummated, as such amounts become earned, due and payable under the DIP Loan

Documents, without the need to obtain further Court approval.  The DIP Loan Parties shall be

jointly and severally liable for all DIP Obligations.  The DIP Loan Parties, the DIP Agent and the

DIP Lenders are hereby expressly authorized and empowered to take all actions determined by

the DIP Agent and the Initial DIP Lenders to be reasonably necessary or advisable to syndicate

the DIP Facility to the extent contemplated in the DIP Loan Documents (and neither the Initial

DIP Lenders nor the DIP Agent shall be liable to any person or entity with respect to any act

taken or omitted from being taken in connection with such syndication).   Any DIP Loan

Documents entered into by any DIP Loan Party prior to the date hereof consistent with the this

Interim Order are hereby approved and ratified in full.

3.      **Authorization to Borrow.**  To prevent immediate and irreparable harm to the

Debtors' estates, from the entry of this Interim Order through and including the earliest to occur

of (i) entry of the Final Order, or (ii) the DIP Termination Date (as defined below), the DIP

Borrower is hereby authorized to borrow under the DIP Facility (and the DIP Guarantors are

hereby authorized to unconditionally guarantee, on a joint and several basis, the repayment of the

DIP Facility) up to the aggregate principal amount of $55 million (the "**Interim Financing**"), in each case, subject to the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

4.      **DIP Obligations.**   This Interim Order and the DIP Loan Documents shall constitute and evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding and enforceable against each of the DIP Loan Parties, their estates and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "**Successor Cases**"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.  All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and/or the DIP Loan Documents by any DIP Loan Party are granted to or for the benefit of the DIP Loan Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of security hereunder and/or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under Sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counter-

claim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

**5.        DIP Liens.**

(a)        Effective immediately upon entry of this Interim Order, the DIP Agent, for the benefit of itself and each of the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "**DIP Liens**") in all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations.

(b)        The term "**DIP Collateral**" means all assets and properties of the Debtors and the other DIP Loan Parties, whether tangible or intangible, real, personal or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors and the other DIP Loan Parties (including under any trade names, styles, or derivations thereof), whether owned or consigned by or to, or leased from or to, or thereafter acquired by, the Debtors and the other DIP Loan Parties, and regardless of where located, whether prior to or after the Petition Date, including, without limitation, all of the Debtors and the other DIP Loan Parties' rights, title and interests in (1) all Prepetition Collateral, (2) all money, cash and cash equivalents; (3) all funds in any deposit accounts, securities accounts, commodities accounts or other accounts (together with and all money, cash and cash equivalents, instruments and other property deposited therein or credited thereto from time to time); (4) all accounts and other receivables (including those generated by intercompany transactions); (5) all contracts and contract rights; (6) all instruments, documents and chattel paper; (7) all securities (whether or not marketable); (8) all goods, as-extracted collateral, furniture, machinery, equipment, inventory and fixtures;

(9) all real property interests; (10) all interests in leaseholds, (11) all franchise rights; (12) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (13) all general intangibles, tax or other refunds, or insurance proceeds; (14) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets; (15) all investment property; (16) all supporting obligations; (17) all letters of credit and letter of credit rights; (18) all commercial tort claims; (19) all other claims and causes of action and the proceeds thereof (including, if and to the extent approved by the Court at the Final Hearing, proceeds of all claims and causes of action arising under chapter 5 of the Bankruptcy Code ("**Avoidance Actions**")); (20) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records); (21) all "Collateral" as defined in the DIP Loan Agreement; (22) to the extent not covered by the foregoing, all other goods, assets or properties of the Debtors and the other DIP Loan Parties, whether tangible, intangible, real, personal or mixed; and (23) all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; *provided*, *however*, that the DIP Collateral shall not include Excluded Collateral (as defined in the DIP Loan Agreement); *provided*, *further*, *however*, that DIP Collateral shall include all rents, profits, proceeds and products of Excluded Collateral.  Notwithstanding any provision of the DIP Loan Agreement, this Interim Order or any other DIP Loan Document to the contrary, no non-Debtor subsidiary or affiliate of the DIP Borrower shall be, or later be required to (i) become a DIP Loan Party or DIP Guarantor, (ii) grant a security interest, pledge or otherwise encumber any of its assets, or (iii)

24

incur any indebtedness, in each case, to the extent such subsidiary or affiliate is contractually prohibited from doing so (unless, in each case, the DIP Borrower or the applicable subsidiary or affiliate has obtained consent from the applicable contractual counterparty to take any such action after using commercially reasonable efforts to obtain the same and only so long as such prohibition was not created solely in contemplation of the DIP Loan Documents and this Interim Order).

6.      **Priority of DIP Liens**.

(a)      The DIP Liens shall have the following priorities:

(1)      Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not subject to a valid, perfected, enforceable and non-avoidable lien or security interest as of the Petition Date (the "**Unencumbered Assets**"), subject only to the Carve-Out[6]; and

(2)      Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected first priority liens on and security interests in all DIP Collateral (other than Unencumbered Assets, as described in, and which shall be treated as set forth in, sub-paragraph (a)(1)), wherever located, which liens and security interests (x) shall be junior only to (i) the Carve-Out, (ii) the Permitted Prior Senior Liens (except to the extent excluded in clause (y)(iii) in this paragraph 6(a)(2)), and (iii) solely with respect to the "ABL Facility First Priority Collateral" (as defined in the ABL Intercreditor Agreement, after giving effect to paragraph 43 of this Interim Order) and DIP

---

[6] For the avoidance of doubt, with respect to ABL Priority Collateral, the DIP Liens shall be junior to the Prepetition ABL Loan Liens and the ABL Adequate Protection Liens on ABL Priority Collateral from after the Petition Date.

Collateral, in each case, of a type that would constitute "ABL Facility First Priority Collateral" (collectively, the "**ABL Priority Collateral**"), the Prepetition ABL Loan Liens and the ABL Adequate Protection Liens, and (y) shall be senior to any and all other liens on and security interests in the DIP Collateral, including, without limitation, (i) the Prepetition Term Loan Liens, (ii) any ABL Adequate Protection Liens and Prepetition ABL Loan Liens in "Term Facility First Priority Collateral" (as defined in the ABL Intercreditor Agreement, after giving effect to paragraph 43 of this Interim Order) and DIP Collateral, in each case, of a type that would constitute "Term Facility First Priority Collateral" (collectively, the "**Term Priority Collateral**"), and (iii) any liens asserted by MacAndrews & Forbes Media Group, Inc. or any of its affiliates against any of the DIP Loan Parties.

(c)     For the avoidance of doubt, the DIP Liens in the DIP Collateral consisting of assets of any non-Debtor DIP Loan Parties (including any non-Debtor DIP Loan Parties incorporated or formed in the United Kingdom or Wales) shall be senior to each of the Prepetition Term Loan Liens in such assets subject, in the case of ABL Priority Collateral, to the Prepetition ABL Loan Liens in such ABL Priority Collateral.

(d)     Notwithstanding anything contained herein or in any of the DIP Loan Documents to the contrary, but subject to paragraphs 11 and 43 hereof and the Carve-Out, the DIP Liens and the DIP Superpriority Claim (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the

26

Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

(e)    To the fullest extent permitted by applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent, or the payment of any fees or obligations to, any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in favor of the Prepetition Agents and the Prepetition Lenders in accordance with this Interim Order.

7.    **DIP Superpriority Claim.**  Effective immediately upon entry of this Interim Order, the DIP Agent, for itself and for the benefit of the DIP Lenders, is hereby granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases on account of the DIP Obligations, with priority over any and all administrative expenses of the kind that are specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, 1114 or any other provisions of the Bankruptcy Code and any other claims against the Debtors (the "**DIP Superpriority Claim**"),

subject only to the Carve Out.  The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code.  The DIP Superpriority Claims shall have recourse against each of the Debtors on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral (including, subject to entry of the Final DIP Order, proceeds of Avoidance Actions). The DIP Superpriority Claims shall, at all times be (x) junior only to the Carve Out, and (y) senior to any and all other administrative expense claims or other claims against the Debtors or their estates, in the Chapter 11 Cases and any Successor Cases, including, without limitation, any claims allowed pursuant to the obligations under or in connection with the Prepetition Obligations and any adequate protection claims granted thereunder.

8.     **No Obligation to Extend Credit.**  The DIP Agent and the DIP Lenders shall have no obligation to make any loan or advance under the **DIP** Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the Required DIP Lenders in their discretion.

9.     **Deposit and Use of DIP Facility Proceeds.**

(a)     *[RESERVED]*

(b)     *Use of DIP Facility Proceeds and Cash Collateral.*  From and after the Closing Date, the DIP Loan Parties shall be permitted to draw upon the Interim Financing and use the proceeds of the DIP Facility and Cash Collateral only for the following purposes, in each case, solely in accordance with and subject to this Interim Order, the DIP Loan Documents and in compliance with the Approved Budget (subject to Permitted Variances):   (i) for the indefeasible payment in full of the Senior Priming Term Loan Obligations; (ii) for the payment

of prepetition amounts acceptable to the Required DIP Lenders and the Required ABL Lenders as authorized by the Court pursuant to orders approving the "first day" motions filed by the Debtors; (iii) in accordance with the terms of the DIP Loan Documents and this Interim Order and/or the Final Order (as applicable), (A) for the payment of working capital and other general corporate needs of the DIP Loan Parties in the ordinary course of business, and (B) for the payment of expenses incurred in connection with the Chapter 11 Cases; (iv) to make the adequate protection payments expressly required hereunder (including the cash collateralization of letters of credit as set forth herein); and (v) to pay the fees and expenses related to the DIP Facility.  For the avoidance of doubt, none of the DIP Loan Parties will use any proceeds of the DIP Facility or the Cash Collateral in a manner or for a purpose other than those consistent with the Approved Budget and this Interim Order.

(c)    ***Repayment of Senior Priming Term Loan Obligations.***    Immediately upon entry of this Interim Order, in connection with the Interim Financing, the DIP Loan Parties are authorized to draw on the DIP Facility to pay in full in cash the Senior Priming Term Loan Obligations (including, without limitation, accrued and unpaid interest (at the non-default rate), the Applicable Premium (as defined in the Senior Priming Term Loan Agreement), fees, expenses, legal fees, disbursements and other amounts properly chargeable thereunder).  The repayment of the Senior Priming Term Loan Obligations provided for herein shall be subject to the reservation of rights of parties-in-interest set forth in paragraph 31 hereof, and upon expiration of the Challenge Period (as defined below) without a timely Challenge (as defined below) being brought, or upon the final resolution of a Challenge brought in compliance with the provisions of this Interim Order and applicable law (where such Challenge did not have the effect of successfully impairing any of the Senior Priming Term Loan Obligations), the DIP

29

Loan Parties' repayment of the Senior Priming Term Loan Obligations shall be deemed to be indefeasible, final and not subject to challenge or dismissal in any respect.

10.    **Authorization to Use Cash Collateral.**  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and solely to the extent expressly permitted in the Approved Budget, the DIP Loan Parties are authorized to use Cash Collateral and proceeds of the DIP Facility until the DIP Termination Date (as defined below) or the Cash Collateral Termination Date (as defined below). All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Loan Documents (subject to the Intercreditor Agreements).  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the DIP Loan Parties' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the DIP Loan Documents and the Approved Budget (subject to the Intercreditor Agreements).

11.    **Adequate Protection.**

(a)    **Adequate Protection for Prepetition Term Loan Secured Parties.**  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Term Loan Secured Parties shall receive the following adequate protection:

(1)    ***Term Loan Adequate Protection Liens.***  Each of the Senior Priming Term Loan Agent, the Priming Term Loan Agent and the Junior Term Loan Agent (collectively, the "**Prepetition Term Loan Agents**"), respectively, for its/their benefit and for the benefit of the Prepetition Term Loan Lenders under the applicable facility, respectively, are hereby granted continuing, valid, binding, enforceable and automatically

perfected postpetition liens on all DIP Collateral to the extent of any Diminution in Value of the Prepetition Term Loan Agent's and Prepetition Term Loan Lenders' interests in the Prepetition Collateral (including Cash Collateral) (the "**Term Loan Adequate Protection Liens**"), which adequate protection liens  (x) shall rank junior only to (1) the Carve-Out, (2) the DIP Liens, (3) the Permitted Prior Senior Liens, and (4) solely with respect to ABL Priority Collateral, the ABL Adequate Protection Liens and the Prepetition ABL Loan Liens, (y) shall have the relative rank and priority among the respective Prepetition Term Loan Secured Parties as set forth in **Annex A** hereto, in accordance with the Intercreditor Agreements, and (z) shall rank senior to any and all other liens and security interests in DIP Collateral, including the Prepetition Term Loan Liens and the Prepetition ABL Loan Liens on Term Priority Collateral.

(2)     *Senior Priming Term Loan Payment*.   To the extent that the Senior Priming Loan Obligations are not approved by the Interim Order to be paid in full, in cash, on the Closing Date as set forth in paragraph 9(b) hereof, the Senior Priming Term Loan Lenders shall receive a payment, in cash, equal to 10.0% of the Senior Priming Term Loan Obligations, which payment shall be paid upon the effective date of any chapter 11 plan of the Debtors.

(3)     *Term Loan Adequate Protection Claim*.  Pursuant to section 507(b) of the Bankruptcy Code, each of the Prepetition Term Loan Agents, respectively, for its benefit and for the benefit of the Prepetition Term Loan Lenders, respectively, are hereby granted an allowed superpriority administrative expense claim to the extent of any Diminution in Value of the Prepetition Term Loan Agent's and Prepetition Term Loan Lenders' interests in the Prepetition Collateral (including Cash Collateral) (the "**Term**

**Loan Adequate Protection Claim**") against each of the Debtors on a joint and several basis, and which shall be payable from and have recourse to all DIP Collateral; *provided, however*, that the Term Loan Adequate Protection Claim (x) shall rank junior only to the (1) Carve-Out, and (2) the DIP Superpriority Claim, (y) shall rank *pari passu* with the ABL Adequate Protection Claim, and (z) shall be senior to any and all other administrative expense claims or other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases.

(4)    ***Adequate Protection Payments.***  The Debtors shall pay all reasonable and documented fees, costs and expenses of (x) the Prepetition Term Loan Agents (including all reasonable and documented fees and expenses of Cravath and Norton Rose), and (y) the ad hoc committee of beneficial owners (or nominees, investment managers, advisors, or subadvisors for the beneficial owners) of the Senior Priming Term Loans, the Priming Term Loans and the Existing Term Loans represented by Stroock and FTI, as may be reconstituted from time to time (the "**Ad Hoc Committee**") (including all reasonable and documented fees and expenses of (A)  Stroock, (B) FTI, and (C) such other professionals as may be retained by the Ad Hoc Committee), in each case, whether incurred prior to or following the Petition Date (and without duplication of any amounts to be paid pursuant to paragraph 2 hereof).  The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee guidelines, may be in summary form only, and shall be provided to counsel to the Debtors, with a copy to the U.S. Trustee and counsel to any Official Committee (collectively, the "**Notice Parties**").  If no objection to payment of the requested fees and expenses are made, in writing by any of the Notice Parties within ten (10) calendar days after delivery of such invoices (the "**Fee Objection**

32

**Period**"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Payments of any amounts set forth in this paragraph 11 shall not be subject to recharacterization, subordination or disgorgement.

(b)     **Adequate Protection for ABL Loan Secured Parties.**  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, the ABL Loan Secured Parties shall receive the following adequate protection:

(1)     **ABL Adequate Protection Liens.**  The ABL Loan Agents, for their benefit and for the benefit of the ABL Loan Lenders, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition liens on all DIP Collateral in the amount and to the extent of any Diminution in Value of the ABL Loan Agents' and ABL Loan Lenders' interests in the Prepetition Collateral (including Cash Collateral) (the "**ABL Adequate Protection Liens**", and together with the Term Loan Adequate Protection Liens, the "**Adequate Protection Liens**"), which adequate protection liens (x) shall rank junior only to (1) the Carve-Out, (2) in the case of Term Priority Collateral, the DIP Liens, and (3) Permitted Prior Senior Liens, and (y) shall be senior to any and all other liens and security interests in the DIP Collateral.

(2)     **ABL Adequate Protection Claim.**  As further adequate protection, pursuant to section 507(b) of the Bankruptcy Code, the ABL Loan Agents, for their

33

benefit and for the benefit of the ABL Loan Lenders, are hereby granted an allowed superpriority administrative expense claim in the amount and to the extent of any Diminution in Value of the ABL Loan Agents' and ABL Loan Lenders' interests in the Prepetition Collateral (including Cash Collateral) (the "**ABL Adequate Protection Claim**", and together with the Term Loan Adequate Protection Claim, the "**Adequate Protection Claims**") against each of the Debtors on a joint and several basis, and which shall be payable from and have recourse to all DIP Collateral; *provided, however,* that the ABL Adequate Protection Claim shall (x) rank junior only to the (1) Carve-Out, and (2) the DIP Superpriority Claim, (y) rank *pari passu* with the Term Loan Adequate Protection Claim, and (z) shall rank senior to any and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases.

(3)    **Adequate Protection Payments and Cash Collateralization of Letters of Credit.**

(i)    The Debtors shall pay all reasonable and documented fees, costs and expenses of the ABL Loan Agents and the ABL Loan Lenders (including all reasonable and documented fees and expenses of Cravath, Norton Rose, and one financial advisor retained by the ABL Loan Agents and the ABL Loan Lenders; *provided, however*, that the ABL Loan Agents and the ABL Loan Lenders shall not engage a financial advisor unless and until such time as the Required ABL Lenders determine in good faith that the information provided by the DIP Lender Professionals and the Professional Persons is insufficient for the ABL Loan Lenders' purposes of evaluating a potential exit financing or for the protection of the ABL Loan Lenders' interest in the

ABL Priority Collateral)[7], *provided*, *further*, *however*, that any such financial advisor shall be subject to reasonable hourly rates and shall not be entitled to any success fee, transaction fee, or similar fee, whether incurred prior to or following the Petition Date (and without duplication of any amounts to be paid pursuant to paragraphs 2 or 11 hereof).  The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee guidelines, may be in summary form only, and shall be provided to the Notice Parties.  If no objection to payment of the requested fees and expenses are made, in writing by any of the Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.   If an objection (solely as to reasonableness) is made by any of the Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

(ii)        The Debtors shall pay in full, in cash and in immediately available funds all accrued and unpaid (whether accrued prior to or after the Petition Date) interest, fees, indemnifications and other amounts (other than principal), at the rates, without allowing any continuations of existing LIBOR loans, and at the default rate provided for in Section 2.15(c) of the ABL Loan Agreement; *provided*, *however*, that the ABL Loan Lenders shall waive any default interest (and only receive non-default interest) to the extent the Debtors satisfy each of the Milestones (as defined below) set forth in

---

[7] It is understood and agreed that the adequate protection payments contemplated herein shall in no manner alter the fees and expenses that are reimbursable pursuant to the terms of the ABL Loan Documents.

paragraphs 22(b)(17)) and times provided for in the ABL Loan Agreement, which payments shall be subject to reallocation under section 506 of the Bankruptcy Code.

(iii)        If, at any time following the entry of this Interim Order, the Aggregate Exposure (as defined in the ABL Loan Agreement) (excluding the amount of any cash collateralized Letters of Credit (as defined in the ABL Loan Agreement), to the extent otherwise included in Aggregate Exposure) exceeds the Borrowing Base Threshold (as defined below) (any such excess, a "**Borrowing Base Deficiency**"), (1) the Debtors shall, concurrently with delivery of such Borrowing Base Certificate (as defined below) (and in any event no later than the close of business on such date), make an immediate cash payment to the ABL Loan Administrative Agent, for the benefit of the ABL Loan Secured Parties, in an amount equal to such Borrowing Base Deficiency, which payment shall be deemed a permanent repayment of the principal amount of the Loans (as defined in the ABL Loan Agreement) in the amount of such payment, and (2) if the Debtors shall not make such immediate payment to the ABL Loan Administrative Agent, then the ABL Loan Secured Parties shall be deemed to have received relief from the automatic stay, and may exercise all rights and remedies available against the ABL Priority Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise, to permanently repay Loans (as defined in the ABL Loan Agreement) in the amount of such Borrowing Base Deficiency.  The Debtors shall continue to comply with their respective obligations under the ABL Loan Documents with respect to cash management systems. Notwithstanding any automatic stay arising as a result of the Chapter 11 Cases, to the

extent the payment of any Borrowing Base Deficiency is not made in accordance with the terms hereof, the consent of the ABL Loan Secured Parties to usage of their Cash Collateral shall be suspended until such time as such Borrowing Base Deficiency shall have been paid. The "**Borrowing Base Threshold**" shall mean an amount equal to (x) the Borrowing Base, based on the most recently delivered Borrowing Base Certificate, minus (y) the greater of (i) the ABL Carve-Out Reserve Amount (as defined below) and (ii) $7 million.

(iv)    Concurrent with the initial funding of the DIP Facility, all Letters of Credit outstanding under the ABL Loan Agreement shall be cash collateralized in accordance with the terms thereof. To the extent not so cash collateralized, then the ABL Loan Collateral Agent shall be deemed to have received relief from the automatic stay, and may exercise all rights and remedies available against the ABL Priority Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise, to cash collateralize such Letters of Credit, in accordance with the ABL Loan Documents.

(c)    Except as expressly provided in paragraph 6 or this paragraph 11, the Adequate Protection Liens and the Adequate Protection Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and

their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, in each case, until such time as the Prepetition Term Loan Obligations and the ABL Loan Obligations, as applicable, are indefeasibly paid in full in cash.  Payments of any amounts set forth in this paragraph 11 shall not be subject to recharacterization, subordination or disgorgement.

12.    **Additional Adequate Protection.**    As further adequate protection to the Prepetition Secured Parties:

(a)    ***Insurance.***  The DIP Borrower shall continue to maintain insurance of the Prepetition Collateral and the DIP Collateral in amounts, and for the risks, and by the entities, as required under the Prepetition Loan Documents, the DIP Loan Documents and this Interim Order.

(b)    ***Financial Reporting; Access to Books and Records.***  The DIP Borrower will provide to the DIP Agent, the DIP Lenders, the Prepetition Agents, the Ad Hoc Committee and their respective professionals such reports and information described in section 6.15 of the DIP Loan Agreement, and such other reports and information as may be reasonably requested by each the foregoing.  In addition, without limiting the rights of access and information afforded the Prepetition Agents, the Prepetition Lenders, the DIP Agent and the DIP Lenders under this Interim Order, the DIP Loan Documents and/or the Prepetition Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Ad Hoc Committee reasonable access to the Debtors' premises and their books and records, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition,

38

the Debtors hereby authorize their independent certified public accountants, attorneys, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Ad Hoc Committee all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

(c)     The Debtors shall furnish an updated certificate (a "**Borrowing Base Certificate**") to the Prepetition Agents and the DIP Agent, for delivery to the respective Prepetition Lenders and DIP Lenders, as soon as available, but in any event (i) in the case of a month-end Borrowing Base Certificate, within fifteen business days of the end of the month and (ii) in the case of a mid-month Borrowing Base Certificate, by the end of the month, which Borrowing Base Certificate shall calculate the Borrowing Base (as defined in the ABL Loan Agreement) as of the end of each such period, and provides the ABL Carve-Out Reserve Amount (as defined below) in the form previously agreed to with the ABL Loan Collateral Agent, and supporting information in connection therewith, together with any additional reports with respect to the Borrowing Base as the Prepetition Agents, DIP Lenders or Ad Hoc Committee may reasonably request. The Debtors shall furnish a Borrowing Base Certificate as of September 15, 2019 or later, on or before October 8, 2019.

13.     **Section 507(b) Reservation.**  The receipt by the Prepetition Secured Parties of the adequate protection provided pursuant to paragraphs 11 and 12 of this Interim Order shall not be deemed an admission that the interests of such Prepetition Secured Parties are indeed adequately protected.  Further, this Interim Order shall not prejudice or limit the rights of such Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection; *provided, however,* that any such additional adequate

protection approved by the Court (subject to paragraph 43 hereof) shall, except with respect to

the ABL Priority Collateral (including the ABL Adequate Protection Liens) in favor of the ABL

Loan Secured Parties, at all times be subordinate and junior to the DIP Obligations and the DIP

Liens granted under this Interim Order and the DIP Loan Documents.  Without limiting the

foregoing, nothing herein shall impair or modify the application of section 507(b) of the

Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to

compensate for any Diminution in Value during any of the Chapter 11 Cases.

### Provisions Common to DIP Financing and
### Use of Cash Collateral Authorization

14.    **Amendments.**    Notwithstanding anything contained herein to the contrary, no

amendment, modification or supplement of any of the DIP Loan Documents shall be effective

unless in writing and in accordance with the applicable DIP Loan Documents.  Subject to the

terms and conditions of the applicable DIP Loan Documents, the DIP Loan Parties and the

applicable DIP Secured Parties may make any nonmaterial amendment, modification or

supplement of any provision of the DIP Loan Documents, and the DIP Loan Parties and the

Required DIP Lenders may waive any provisions in the DIP Loan Documents, without further

notice to any person or entity or approval of the Court.  In the case of any material amendment,

modification or supplement to the DIP Loan Documents that is adverse to the DIP Loan Parties

(a "**Material Amendment**"), the Debtors shall provide notice (which may be provided via

electronic mail or other electronic means) to counsel to the Notice Parties and the ABL Loan

Agents; *provided, however*, that any amendment, modification or supplement to the DIP Loan

Documents for the purpose of adding additional financial institutions as DIP Lenders and

reallocating the commitments for the DIP Facility among the DIP Lenders in connection with

any syndication of the DIP Facility shall not require notice to any person or entity or further

order of the Court.  If no objections are timely received (or if the Notice Parties and the ABL Loan Agents indicate via electronic mail or otherwise that they have no objection) to a Material Amendment within five (5) calendar days from the date of delivery of such notice, the DIP Loan Parties may proceed to execute such Material Amendment, which shall become effective immediately upon execution.  If a Notice Party or an ABL Loan Agent timely objects, approval of the Court will be necessary to effectuate a Material Amendment.

15.     **Budget.**

(a)     **Initial Budget.**   The Debtors have prepared and delivered to the DIP Agent, the Initial DIP Lenders, the ABL Loan Lenders and the ABL Loan Agents (and the DIP Agent, the Initial DIP Lenders, the ABL Loan Lenders and the ABL Loan Agents  have approved) an initial budget, a copy of which is attached hereto as **Annex B** (the "**Initial Budget**"), which reflects the Debtors' anticipated cash receipts and all anticipated necessary and required disbursements for each calendar week during the period from the week immediately prior to the week in which the Closing Date occurs through and including the end of the 13th calendar week thereafter.  The Initial Budget (as supplemented by any budget that is approved by the Required DIP Lenders and the Required ABL Lenders in accordance with the terms of the DIP Loan Documents and this Interim Order) shall be deemed the "Approved Budget" for all purposes hereof, until superseded by a subsequent Approved Budget pursuant to the provisions of the DIP Loan Documents and this Interim Order.

(b)     **Updated Budgets.**  The Debtors shall prepare in good faith and deliver to the DIP Agent, the DIP Lenders, the professionals for the Initial DIP Lenders, the ABL Loan Agents and the ABL Loan Lenders, updated cash flow statements, consistent with the form and level of detail of the Initial Budget and otherwise in form and substance acceptable to the

41

Required DIP Lenders and the Required ABL Lenders, as and to the extent required by, and at such times, and for the periods required under, the DIP Loan Agreement.  Each budget delivered to the DIP Agent, the DIP Lenders, the ABL Loan Agents or the ABL Loan Lenders shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent, the DIP Lenders, the DIP Lender Professionals, the ABL Loan Agents and/or the ABL Loan Lenders, and shall be prepared in good faith, with due care and based upon assumptions the Debtors believe to be reasonable.  For the avoidance of doubt, no amendment, modification or update to an Approved Budget shall be effective without the approval of (i) the Required DIP Lenders or the DIP Lender Professionals, or (ii) the Required ABL Lenders.

(c)    **Budget Compliance.** All borrowings under the DIP Facility, and the use of Cash Collateral, shall at all times comply with the Approved Budget, on the terms and subject to the permitted variances expressly set forth in the DIP Loan Agreement without giving effect to any amendment or waiver thereof unless consented to by the Required ABL Lenders (the "**Permitted Variances**").  The Debtors shall provide all budget, variance reports, other reports and other access to information as required in section 6.15 of the DIP Loan Agreement without giving effect to any amendment or waiver thereof unless consented to by the Required ABL Lenders.  In addition, the Debtors shall comply with all Financial Covenants (as defined in the DIP Loan Documents) in the DIP Loan Agreement without giving effect to any amendment or waiver thereof unless consented to by the Required ABL Lenders.  The Debtors' failure to comply with the Approved Budget (subject to Permitted Variances), to provide the reports and other information required in section 6.15 of the DIP Loan Agreement, or maintain compliance with all financial maintenance covenants in the DIP Loan Agreement, shall constitute a DIP Termination Event and a Cash Collateral Termination Event.

42

16.      **Modification of Automatic Stay.**  Subject to paragraph 23 hereof, the automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claim, and to perform such acts as the DIP Agent or the DIP Lenders may reasonably request, to assure the perfection and priority of the DIP Liens; (b) the Debtors to take all appropriate action to grant the Adequate Protection Liens and the Adequate Protection Claims set forth herein, and to take all appropriate action (including such action as the ABL Loan Agents or the ABL Loan Lenders may reasonably request) to ensure that the Adequate Protection Liens granted thereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations, including all the DIP Obligations, to the DIP Secured Parties as contemplated under this Interim Order and the DIP Loan Documents, and to perform under the DIP Loan Documents any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Interim Order; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents, the Payment Letters and this Interim Order; (e) the DIP Secured Parties and the applicable Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order; (f) subject to paragraphs 23 and 43 hereof, the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of any "Event of Default" under the DIP Loan Agreement, all rights and remedies provided for in the DIP Loan Documents and take any or all actions provided therein (subject, in each case, to the terms of the Intercreditor Agreements); (g) the ABL Loan Agents to exercise their rights under paragraph 11(b)(3)(iii) of this Interim Order, and (h) the implementation of all of the terms, rights, benefits,

43

privileges, remedies and provisions of this Interim Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of this Court.

17.    **Perfection of DIP Liens and Postpetition Liens.**  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all liens granted herein, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of execution, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Prepetition Agents, the Prepetition Lenders, the DIP Agent or the DIP Lenders to the priorities granted herein (other than, to the extent applicable, any such filings required under foreign law to validate or perfect such liens on DIP Collateral of non-Debtor DIP Loan Parties).  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agents, without any further consent of any party, is authorized to execute, file or record (and the DIP Agent or Prepetition Agents may require the execution, filing or recording), as each, in its sole discretion deems necessary, such financing statements, mortgages, notices of lien, and other similar documents to enable the DIP Agent and the Prepetition Agents to further validate, perfect, preserve and enforce the DIP Liens or other liens and security interests granted hereunder, perfect in accordance with applicable law or to otherwise evidence the DIP Liens and/or the Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens (other than, to

44

the extent applicable, any such filings required under foreign law to validate or perfect such liens

on DIP Collateral of non-Debtor DIP Loan Parties).  The DIP Loan Parties are authorized and

directed to execute and deliver promptly upon demand to the DIP Agent or the Prepetition

Agents all such financing statements, mortgages, notices, and other documents as the DIP Agent

or the Prepetition Agents may reasonably request.  The DIP Agent or the Prepetition Agents,

each in its discretion, may file a photocopy of this Interim Order as a financing statement with

any filing or recording office or with any registry of deeds or similar office, in addition to or in

lieu of such financing statements, notices of lien, or similar instruments.  To the extent that any

Prepetition Agent is a secured party under any account control agreement, listed as an additional

insured, loss payee under any of the Debtors' insurance policies or is the secured party under any

loan document, financing statement, deed of trust, mortgage or other instrument or document

which may otherwise be required under the law of any jurisdiction to validate, attach, perfect or

prioritize liens (any such instrument or document, a "**Security Document**"), the DIP Agent is

also deemed to be the secured party under each such Security Document, and shall have all the

rights and powers attendant to that position (including, without limitation, rights of

enforcement), and shall act in that capacity and distribute any proceeds recovered or received in

accordance with the terms of this Interim Order and/or the Final Order, as applicable, and the

other DIP Loan Documents (subject, in each case, to the terms of the Intercreditor Agreements).

The Prepetition Agents shall serve as agents for the DIP Agent solely for the purposes of

perfecting its security interests in and liens on all DIP Collateral that is of a type such that

perfection of a security interest therein (but for the entry of this Interim Order) may be

accomplished only by possession or control by a secured party.

18.    **Protection of DIP Lenders' Rights and Adequate Protection Liens.**  Subject to

paragraph 43 hereof, so long as there are any DIP Obligations outstanding under the DIP Loan

Documents, the Prepetition Agents and the Prepetition Lenders shall (a) have no right to, and

take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant

to the Prepetition Loan Documents, this Interim Order or otherwise seek or exercise any

enforcement rights or remedies against any DIP Collateral or in connection with the debt and

obligations underlying the Prepetition Loan Documents or the Adequate Protection Liens (as

defined below), including, without limitation, in respect of the occurrence or continuance of any

event of default under any of the Prepetition Loan Documents, (b) be deemed to have consented

to any release of DIP Collateral authorized under the DIP Loan Documents, (c) not file any

further financing statements, patent filings, trademark filings, copyright filings, mortgages,

memoranda of lease, notices of lien or similar instruments, or otherwise take any action to

perfect their security interests in the DIP Collateral unless, solely as to this clause (c), the DIP

Lenders file financing statements or other documents to perfect the liens granted pursuant to the

DIP Loan Documents and/or this Interim Order, or as may be required by applicable state law to

continue the perfection of valid and unavoidable liens or security interests as of the date of filing,

and (d) deliver or cause to be delivered, at the Debtors' cost and expense (for which the

Prepetition Agents shall be reimbursed upon submission to the Debtors of invoices or billing

statements), any termination statements, releases and/or assignments (to the extent provided for

herein) in favor of the DIP Agent and the DIP Lenders or other documents necessary to

effectuate and/or evidence the release, termination and/or assignment of the Adequate Protection

Liens on any portion of the DIP Collateral subject to any sale or disposition approved or

arranged for by the DIP Agent.

46

19.   **Proceeds of Subsequent Financing.**   Without limiting the provisions of the
immediately preceding paragraph, if the Debtors, any trustee, any examiner with enlarged
powers or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any
Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the
Bankruptcy Code in violation of this Interim Order or the DIP Loan Documents at any time prior
to the indefeasible payment in full in cash of all of the DIP Obligations and the Prepetition
Obligations, the satisfaction of the Superpriority DIP Claim and the Adequate Protection
Claims, and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit
under the DIP Facility and this Interim Order (including subsequent to the confirmation of any
plan with respect to any or all of the Debtors and the Debtors' estates), then, unless otherwise
agreed by the Required DIP Lenders in their discretion, (i) all of the cash proceeds derived from
such credit or debt shall immediately be turned over to the DIP Agent to be applied to the
DIP Obligations pursuant to the DIP Loan Agreement, and (ii) after payment in full of all DIP
Obligations in cash, all the cash proceeds derived from such credit or debt shall immediately be
turned over to the Prepetition Agents to be applied pursuant to the applicable Prepetition Loan
Documents, in each case, consistent with the Intercreditor Agreements (as and to the extent
applicable).

20.   **Maintenance of DIP Collateral.**   The Debtors shall continue to maintain all
property, operational and other insurance as required and as specified in the DIP Loan
Documents.  The Debtors shall provide the DIP Agent and its counsel (for distribution to the DIP
Lenders) with evidence of such insurance within one (1) calendar day after entry of this Interim
Order.  Upon entry of this Interim Order and to the fullest extent provided by applicable law,
each of the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any

47

further action or notice, named as additional insureds and loss payees on each insurance policy

maintained by the Debtors that in any way relates to the DIP Collateral.  The Debtors shall also

maintain the cash management system in effect as of the Petition Date, as modified by this

Interim Order and any order that may be entered by the Court in accordance with this Interim

Order, which has first been agreed to by the Required DIP Lenders and the Required ABL

Lenders.  The Debtors shall not open any new Deposit Account or Securities Account (in each

case, as defined in the ABL Intercreditor Agreement), other than the Adequate Assurance

Account, that is not subject to the security interests of each of the Prepetition Secured Parties.

21.     **Disposition of DIP Collateral.**   The Debtors shall not sell, transfer, lease,

encumber or otherwise dispose of any portion of the DIP Collateral (or enter into any binding

agreement to do so) other than in the ordinary course of business without the prior written

consent of the Required DIP Lenders and, in the case of any ABL Priority Collateral, the

Required ABL Lenders and the Required DIP Lenders (and no such consent shall be implied

from any other action, inaction or acquiescence by the DIP Lenders or Required ABL Lenders,

as applicable), except as otherwise provided for in the DIP Loan Documents or otherwise

ordered by the Court, and, in each case, subject to the Intercreditor Agreements.

22.     **Termination Date.**

(a)     **DIP Termination Events.**   Each of the following shall constitute a

termination event under this Interim Order (each a "**DIP Termination Event**", and the date upon

which such DIP Termination Event occurs, the "**DIP Termination Date**"), unless waived in

writing by the Required DIP Lenders:  (1) the occurrence of an "Event of Default" under and as

defined in the DIP Loan Agreement; (2) the scheduled maturity date of the DIP Facility; (3) 4:00

p.m. New York time on the date that is thirty-five (35) calendar days after the Petition Date, if

the Final Order, in form and substance acceptable to the DIP Agent and the Required DIP

Lenders, has not been entered by such date; (4) the date of consummation of any sale of all or

substantially all the assets of the Debtors;  (5) the effective date of a chapter 11 plan; (6) the

Debtors seek any amendment, modification, or extension of this Interim Order without the prior

written consent of the Required DIP Lenders (and no such consent shall be implied by any other

action, inaction, or acquiescence of the DIP Secured Parties); (7) the failure by the Debtors to

timely perform any of the material terms, provisions, conditions, covenants, or other obligations

under this Interim Order, or (8) the occurrence of the Cash Collateral Termination Date (as

defined below).

(b)     **Cash Collateral Termination Events.** Each of the following shall

constitute a termination event under this Interim Order with respect to the usage of Cash

Collateral (each a "**Cash Collateral Termination Event**", and the date upon which such Cash

Collateral Termination Event occurs, the "**Cash Collateral Termination Date**"), unless waived

in writing by the Required ABL Lenders:

(1)     4:00 p.m. New York time on the date that is 35 calendar days after
the Petition Date, if the Final Order, in form and substance acceptable to the ABL Loan
Agents and the Required ABL Lenders, has not been entered by such date;

(2)     any Debtor's failure to comply with any of the terms, provisions,
conditions, covenants or obligations under this Interim Order that is material to the
interests of the Prepetition ABL Secured Parties, including, but not limited to, failure to
comply with the Approved Budget (subject to Permitted Variances);

(3)     the failure of the Debtors to make any payment under this Interim
Order to any ABL Loan Agent or the ABL Loan Lenders (as applicable) within one (1)
business day after such payment becomes due (other than payments required under
paragraph 11(b)(3)(i) of this Interim Order, which payments shall be made as required
therein);

(4)     the entry of an order in the Chapter 11 Cases amending,
supplementing, staying, vacating or otherwise modifying this Interim Order in a manner
materially adverse to the ABL Loan Agents or the ABL Loan Lenders without the prior
written consent of the Required ABL Lenders;

49

(5)      the cessation of Liens, security interests or superpriority claims granted with respect to the ABL Loan Obligations to be valid, binding, enforceable and non-avoidable, and (with respect to the Liens), fully and properly perfected, in all respects;

(6)      the occurrence of a DIP Termination Event, unless waived or cured in accordance with paragraph 22(a) hereof (if applicable);

(7)      the payment of, or application by any Debtor (or any Debtor supports any party that seeks the following relief) for authority to pay, any prepetition claim without the Required ABL Lenders' prior written consent other than (i) as provided in any "first day order" in form and substance acceptable to the Required ABL Lenders, or (ii) as set forth in the Approved Budget (subject to the Permitted Variances);

(8)      the Debtors shall institute any proceeding or investigation, or support the same instituted by any other person, challenging the validity, enforceability, perfection or priority of the Liens securing the Prepetition ABL Loan Obligations;

(9)      the entry of an order by the Bankruptcy Court appointing, or the filing of an application by any Debtor (or any Debtor supports any party that seeks the following relief), for an order seeking the appointment of, in either case, without the consent of the Required ABL Lenders, an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or an examiner under section 1104 of the Bankruptcy Code in the Chapter 11 Cases, with expanded powers (beyond those set forth in sections 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code) to operate or manage the financial affairs, the business, or reorganization of the Debtors or with the power to conduct an investigation of (or compel discovery from) the ABL Loan Agents or the ABL Loan Lenders;

(10)      the filing of any pleading by any Debtor in opposition, or in support of any other person's opposition, to any motion filed in the Court by the ABL Loan Agents or the ABL Loan Lenders seeking confirmation of the amount of their claims or the validity or enforceability of the Prepetition ABL Loan Liens or the ABL Adequate Protection Liens, except with regard to good faith disputes over the payment of expenses and fees or contingent obligations;

(11)      the payment of or granting adequate protection with respect to any prepetition Indebtedness (other than with respect to payment permitted under any "first day order" in form and substance satisfactory to the Required ABL Lenders or as set forth in this Interim Order);

(12)      the dismissal of any of the Chapter 11 Cases, other than in respect of DX Holdings;

(13)      the conversion of any of the Chapter 11 Cases from one under chapter 11 to one under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise;

(14)      the remittance, use or application of Cash Collateral and proceeds of the DIP Facility by the Debtors other than in accordance with this Interim Order;

(15)    the Bankruptcy Court shall cease to have exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under this Interim Order or the Liens granted hereunder;

(16)    the filing by any Debtor of an application (or any Debtor supports any other party in seeking the following relief), seeking the entry of an order in the Chapter 11 Cases avoiding, subordinating, disgorging, setting off or requiring repayment or disgorgement of any portion of the payments made on account of the ABL Loan Obligations (including any of the adequate protection payments made pursuant to the terms hereof);

(17)    the failure of the Debtors to:

1.  Obtain entry of (a) an order (the "**Confirmation Order**") confirming a chapter 11 plan that (a) repays in full, in cash, the ABL Loan Obligations on the effective date of the plan, or (b) is otherwise in form and substance acceptable to the Required ABL Lenders with respect to the treatment of the ABL Loan Obligations thereunder (the "**Acceptable Plan**"), and (b) an order approving a disclosure statement for such chapter 11 plan, in form and substance acceptable to the Required ABL Lenders (the "**Disclosure Statement**"), and all other related relief, in each case, in form and substance acceptable to the Required ABL Lenders with respect to the treatment of the ABL Loan Obligations thereunder, by November 15, 2019 (or such later date as may be required to accommodate the Court's schedule);

2.  Cause the effective date of the Acceptable Plan to occur no later than fourteen (14) calendar days after the entry of the Confirmation Order; *provided* that if the Confirmation Order is entered after November 7, 2019, the Debtors shall use commercially reasonable efforts to lift any stay of effectiveness of the Confirmation Order within seven (7) calendar days after the entry of the Confirmation Order.

Each of the Debtors' obligations set forth in this paragraph 22(b)(17) shall be referred to in this Interim Order as a "**Milestone**".

(18)    the filing by any Debtor of any plan of reorganization, or any amendment to such plan, that is not an Acceptable Plan (or any Debtor supports any other party that seeks the foregoing relief);

(19)    the entry of an order in any of the Chapter 11 Cases confirming a plan or plans of reorganization other than an Acceptable Plan;

(20)    the bringing of a motion by any Debtor (or any Debtor supports any party that seeks the following relief), or the entry of any order by the Court in the Chapter 11 Cases: (i) to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code secured by a senior lien on (x) ABL Priority Collateral or (y) Term Priority Collateral in excess of the threshold set forth in the ABL Intercreditor Agreement in the definition of "Term Loan Priority Claims", in either case, that does not provide for

51

the repayment of all ABL Loan Obligations in full in cash; (ii) to use cash collateral of the ABL Loan Agents or the ABL Loan Lenders under section 363(c) of the Bankruptcy Code without the prior written consent of the ABL Loan Agents and the Required ABL Lenders; or (iii) that requests or seeks authority for or that approves or provides authority to take any other action or actions materially adverse to the rights and remedies of the ABL Loan Agents or the ABL Loan Lenders or their interest in any DIP Collateral or Prepetition Collateral;

(21)    the entry of an order by the Bankruptcy Court, as applicable, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any ABL Priority Collateral, or (y) with respect to any Lien of or the granting of any Lien on any ABL Priority Collateral to any state or local environmental or regulatory agency or authority having priority over the Liens in favor of the ABL Loan Agents;

(22)    the Debtors' failure to comply with paragraphs 11(b)(3)(iii) or 11(b)(3)(iv) of this Interim Order;

(23)    any lien or security interest purported to be created under the ABL Loan Documents shall cease to be, or shall be asserted by any Debtors not to be, a valid and perfected lien on or security interest in any Prepetition ABL Loan Collateral, with the priority required by the ABL Loan Documents and this Interim Order;

(24)    except as expressly provided by this Interim Order, the filing by any Debtor of an application (or any Debtor supports any party that seeks the following relief) in the Chapter 11 Cases, or the entry of an order granting, any other super priority administrative claim or Lien in ABL Priority Collateral equal or superior to that granted to the ABL Loan Agents, on behalf of itself and the ABL Loan Secured Parties, without the prior written consent of the Required ABL Lenders;

(25)    except as expressly provided by this Interim Order, the filing by any Debtor of an application (or any Debtor supports any party that seeks the following relief) in the Chapter 11 Cases, or the entry of an order or the entry of any order granting, any superpriority claim which is senior or *pari passu* with the ABL Loan Lenders' claims without the prior written consent of the Required ABL Loan Lenders, in each case, except as may be set forth in this Interim Order or the Final Order;

(26)    the filing by any Debtor of an application (or any Debtor supports any other party in seeking the following relief), or the entry of an order precluding the ABL Loan Agents from having the right to, or being permitted to, "credit bid", subject to the terms of the Intercreditor Agreements and paragraph 43 hereof;

(27)    except as expressly provided by this Interim Order, any attempt by any Debtor to reduce, avoid, set off or subordinate, or the entry of an order in any of the Chapter 11 Cases reducing, avoiding, setting off or subordinating, the ABL Loan Obligations or the Liens securing such ABL Loan Obligations to any other debt;

(28)    an application for any of the orders that would constitute a Cash Collateral Termination Event shall be made by a person other than the ABL Loan Agents or the ABL Loan Lenders and such application is not, to the extent requested by the ABL

Loan Agents or the Required ABL Lenders, contested by any Debtor in good faith and the relief requested is granted in an order that is not stayed pending appeal;

(29)    the termination or modification of any Debtor's exclusive right to file and solicit acceptances of a plan of reorganization; and

(30)    the sale, without the ABL Loan Agents' and the Required ABL Lenders' consent, of all or substantially all of the Debtors' assets either through a sale under section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Cases or otherwise, except in the case of an Acceptable Plan.

23. **Rights and Remedies Upon Termination Events.**

(a)    **DIP Termination Event.** Subject in all respects to paragraph 43 hereof, immediately upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent may, and at the request of the Required DIP Lenders, shall (and any automatic stay otherwise applicable to the DIP Secured Parties, whether arising under section 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Agent to), upon the delivery of written notice (which may include electronic mail) to the Debtors, counsel to the Debtors, counsel for the ABL Loan Agents, counsel for any Official Committee, and the U.S. Trustee (collectively, the "**Remedies Notice Parties**"), (a) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) terminate, reduce or restrict any commitment to extend credit to the Debtors to the extent any such commitment remains, (c) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (d) terminate and/or revoke the Debtors' right, if any, under this Interim Order and the other DIP Loan Documents to use any Cash Collateral (subject to the last sentence of this Paragraph 23(a)); (e) invoke the right to charge interest at the default rate under the DIP Loan Documents, (f) freeze monies or balances in the Debtors' accounts; (g) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent or the DIP Lenders

against the DIP Obligations, (h) otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Lenders, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and (i) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents or applicable law; *provided, however,* that prior to the exercise of any right in clauses (f) though (i) of this paragraph, the DIP Agent shall be required to provide three (3) business days' written notice to the Remedies Notice Parties of the DIP Agent's intent to exercise its rights and remedies (the "**DIP Remedies Notice Period**").  Unless during such DIP Remedies Notice Period the Court determines that a DIP Termination Event has not occurred, the DIP Agent and the DIP Lenders shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the DIP Collateral (including Term Loan Adequate Protection Liens on Term Priority Collateral), collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise (in each case, subject to paragraph 43 hereof).  Upon the occurrence and during the continuation of a DIP Termination Event and the expiration of the DIP Remedies Notice Period, the DIP Agent and any liquidator or other professional acting at the direction of the DIP Agent will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the Debtors have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral,

including pursuant to any Court approved sale process (subject, in each case, to the rights of third parties in each of the foregoing). The Debtors shall reasonably cooperate with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise, and the Debtors waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Interim Order and in the DIP Loan Documents, other than to dispute whether a DIP Termination Event has in fact occurred; *provided*, *however,* that that none of the DIP Secured Parties shall object to a request by the Debtors for an expedited hearing before the Court to contest whether a DIP Termination Event has in fact occurred. Notwithstanding anything to the contrary set forth in this paragraph 23, but subject to paragraph 22(b) hereof, during the DIP Remedies Notice Period, the Debtors may use Cash Collateral to pay only the following amounts and expenses: (i) the Carve-Out (subject to paragraph 29 hereof); and (ii) amounts that the Debtors and the Required DIP Lenders have determined in good faith are in the ordinary course, are critical to the preservation of the Debtors and their estates and have been approved in advance in writing by the Required DIP Lenders.

(b)     **Cash Collateral Termination Event.** Subject in all respects to paragraph 43 hereof, immediately upon the occurrence and during the continuation of a Cash Collateral Termination Event, the ABL Loan Agents may, and at the request of the Required ABL Lenders, shall (and any automatic stay otherwise applicable to the ABL Loan Secured Parties, whether arising under section 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the ABL Loan Agents to), upon the delivery of written notice (which may include electronic mail) to the

Remedies Notice Parties:   (a) terminate and/or revoke the Debtors' right, if any, under this Interim Order to use any Cash Collateral of the ABL Loan Secured Parties (subject to the last sentence of this Paragraph 23(b)); (b) freeze monies or balances in the Debtors' accounts; (c) immediately set-off any and all amounts constituting ABL Priority Collateral in accounts maintained by the Debtors with the ABL Loan Agents or the ABL Loan Lenders against the ABL Loan Obligations; (d) otherwise enforce any and all rights against the ABL Priority Collateral, including, without limitation, disposition of any ABL Priority Collateral for application towards the ABL Loan Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents or applicable law; *provided, however,* that prior to the exercise of any right in clauses (c) though (e) of this paragraph, the ABL Loan Agents shall be required to provide three (3) business days' written notice to the Remedies Notice Parties of the ABL Loan Agents' intent to exercise its rights and remedies (the "**Cash Collateral Remedies Notice Period**").   Unless during such Cash Collateral Remedies Notice Period the Court determines that a Cash Collateral Termination Event has not occurred, the ABL Loan Agents and the ABL Loan Lenders shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the ABL Priority Collateral (including ABL Adequate Protection Liens on ABL Priority Collateral), collect accounts receivable, and apply the proceeds thereof to the Prepetition ABL Obligations, occupy the Debtors' premises to sell or otherwise dispose of the ABL Priority Collateral, or otherwise exercise all rights and remedies available against the ABL Priority Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise (in each case, subject to paragraph 43 hereof).   Upon the occurrence and during the

continuation of a Cash Collateral Termination Event and the expiration of the Cash Collateral
Remedies Notice Period, the ABL Loan Agents and any liquidator or other professional acting at
the direction of the ABL Loan Agents will have the right to access and utilize, on a royalty-free
basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse,
distribution centers, store or other locations that the Debtors have a right to occupy to the extent
necessary or appropriate in order to sell, lease or otherwise dispose of any of the ABL Priority
Collateral, including pursuant to any Court approved sale process (subject, in each case, to the
rights of third parties in each of the foregoing).  The Debtors shall reasonably cooperate with the
ABL Loan Agents and the ABL Loan Lenders in their exercise of rights and remedies, whether
against the ABL Priority Collateral or otherwise, and the Debtors waive any right to seek relief
under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would
restrict or impair the rights and remedies of the ABL Loan Agents and the ABL Loan Lenders
set forth in this Interim Order and in the ABL Loan Documents, other than to dispute whether a
Cash Collateral Termination Event has in fact occurred; *provided*, *however,* that that none of the
ABL Loan Secured Parties shall object to a request by the Debtors for an expedited hearing
before the Court to contest whether a Cash Collateral Termination Event has in fact occurred.
Notwithstanding anything to the contrary set forth in this paragraph 23(b), but subject to
paragraph 22(b) hereof, during the Cash Collateral Remedies Notice Period, the Debtors may use
Cash Collateral to pay only the following amounts and expenses:   (i) the Carve-Out; and
(ii) amounts that the Debtors and the Required ABL Lenders have determined in good faith are
in the ordinary course, are critical to the preservation of the Debtors and their estates and have
been approved in advance in writing by the Required ABL Lenders.   For the avoidance of doubt,
all references to "ABL Priority Collateral" in this Interim Order shall include any DIP Collateral

in which the ABL Loan Secured Parties have a Prepetition ABL Lien or an ABL Adequate Protection Lien, in each case that constitutes ABL Priority Collateral, subject to the terms hereof and the relative rights and priorities set forth herein and in the Intercreditor Agreements.

24. **Landlord Agreements; Access.**    All landlord agreements to which the Prepetition Agents are a party shall be deemed amended to include the DIP Agent as beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Agent against, and binding upon, each landlord party thereto (subject in each case to the terms of the Intercreditor Agreements and paragraph 43 hereof).  Any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the DIP Liens.  Without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents and paragraph 43 hereof, upon three (3) business days' written notice to counsel to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, that a DIP Termination Event has occurred and is continuing, the DIP Agent, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent or the Prepetition Agents, as applicable (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon, and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets

58

of the Debtors, which are owned by or subject to a lien of any third party and which are used by

Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph 24,

without interference from lienholders or licensors thereunder; *provided*, *however*, that the DIP

Agent (on behalf of the DIP Secured Parties) shall pay only rent and additional rent, fees,

royalties, or other monetary obligations of the Debtors that first arise after the written notice

referenced above from the DIP Agent and that accrue during the period of such occupancy or use

by DIP Agent calculated on a per diem basis.  Nothing herein shall require the Debtors, the DIP

Agent or the other DIP Secured Parties, to assume any lease or license under Bankruptcy Code

section 365(a) as a precondition to the rights afforded to the DIP Agent and the other

DIP Secured Parties herein.  Nothing shall prevent the rights of a landlord to object to the relief

being sought in this paragraph 24 subject to the Final Hearing.  Notwithstanding the foregoing,

the DIP Agent's exercise of its remedies pursuant to this paragraph with respect to real property

leases shall be subject to (to the extent not inconsistent with the Bankruptcy Code): (i) any

agreement in writing between any of the Prepetition Agents, as applicable, and any applicable

landlord, (ii) preexisting rights of any of the Prepetition Agents, as applicable, and any

applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord,

or (iv) further order of the Court following notice and a hearing.  Notwithstanding anything set

forth in this paragraph, the rights granted under this paragraph as granted only to the extent

permitted, either expressly or implicitly as a matter of non-bankruptcy law by the applicable

agreements between the Debtors and the landlord at issue.

25.    **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.**  The DIP Agent and the DIP Lenders have acted in good faith in

connection with the DIP Facility, the DIP Loan Documents, the Interim Financing, and with this

Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, reversal, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders arising prior to the effective date of any such modification, reversal, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.     **DIP and Other Expenses.**  The Debtors are authorized and directed to pay, in cash and on a current basis, all out-of-pocket fees, costs, disbursements and expenses of the DIP Agent and the DIP Lenders incurred at any time, as provided by the DIP Loan Documents and this Interim Order, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees and expenses, financial advisory fees and expenses, fees and expenses of other consultants and indemnification and reimbursement of fees and expenses (including, for the avoidance of doubt, all fees, expenses and disbursements of the DIP Lender Professionals).  Payment of all such fees and expenses shall not be subject to review or allowance by the Court.  The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee guidelines, may

be in summary form only, and shall be provided to counsel to the Debtors, with a copy to the Notice Parties.  If no objection to payment of the requested fees and expenses are made, in writing by any of the Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized, without further notice or hearing, to (a) pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agent and the Initial DIP Lenders incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the DIP Loan Agreement, subject to retroactive review by the Notice Parties in accordance with this paragraph and repayment as and to the extent necessary in connection therewith, and (b) to pay on the Final Borrowing Date (as defined in the DIP Loan Agreement) all reasonable and documented fees, costs and out-of-pocket expenses of the DIP Agent and DIP Lenders incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the DIP Loan Agreement.  Payments of any amounts set forth in this paragraph 26 shall not be subject to recharacterization, subordination or disgorgement except as expressly provided in the preceding sentence.

27.    **Indemnification.**  The Debtors shall jointly and severally indemnify and hold harmless the DIP Agent (solely in its capacity as DIP Agent), each DIP Lender (solely in its capacity as DIP Lender) and each of their respective officers, directors, employees, parents,

61

subsidiaries, affiliates, agents, advisors, attorneys and representatives (each, an "Indemnified **Party**") from and against any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of or in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or relating to the DIP Facility, the DIP Liens, the DIP Loan Documents or the transactions contemplated thereby, or any use made or proposed to be made with the proceeds of the DIP Facility, whether or not such investigation, litigation or proceeding is brought by any Debtor or any of its subsidiaries, any shareholders or creditors of the foregoing, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or under the DIP Loan Documents are consummated, except to the extent such claim, damage, loss, liability or expense is found in a final non appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's gross negligence or willful misconduct.

28.    **Proofs of Claim.**  The DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successors Cases for any claim allowed herein or therein in respect of the ABL Loan Obligations or the Prepetition Term Loan Obligations.  Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Agent, the DIP Lenders, any Prepetition Agent or any Prepetition Lenders; *provided, however*, that notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of

itself and the DIP Lenders, and the Prepetition Agents on behalf of the Prepetition Lenders, respectively, may (but are not required) in their discretion to file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by the DIP Agent, any Prepetition Agent or any Prepetition Lenders shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

> **29.    Carve-Out.**

> > (a)    *Carve-Out*.  For purposes of this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees (including success or transaction fees) and expenses (collectively, the "**Professional Fees**") accrued or incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**"), and any Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first Business Day (as defined in the DIP Loan Agreement) following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by

the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional

Fees in an aggregate amount not to exceed $750,000 incurred after the first Business Day

following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at

any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this

clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**"); *provided*, *however*, that prior to

the indefeasible payment in full of the ABL Loan Obligations, the Carve-Out solely as to the

ABL Secured Parties with respect to the ABL Priority Collateral shall be limited to the ABL

Carve-Out Reserve Amount.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall

mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the

direction of the Required DIP Lenders) to the DIP Lenders, the Debtors, their lead restructuring

counsel, the U.S. Trustee, counsel to the Ad Hoc Committee and counsel to the ABL Loan

Administrative Agent, and counsel to the Official Committee, which notice may be delivered

following the occurrence and during the continuation of an Event of Default and acceleration of

the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap

has been invoked; *provided that* nothing herein shall be construed to impair the ability of any

party to object to the fees, expenses, reimbursement, or compensation described in clauses (i),

(ii), (iii), or (iv) above, on any grounds.

(b)    *Fee Estimates*. Not later than 7:00 p.m. New York time on the third

business day of each two-week period covered by the applicable Borrowing Base Certificate,

each Professional Person shall deliver to the Debtors a statement setting forth a good-faith

estimate of the amount of fees and expenses (collectively, "**Estimated Fees and Expenses**")

incurred during the two-week period covered by the applicable Borrowing Base Certificate by

such Professional Person (through Saturday of such two-week period, the "**Calculation Date**"),

along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Bi-Weekly Statement**"); provided, that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Bi-Weekly Statement has been delivered and concluding on the Termination Declaration Date. If any Professional Person fails to deliver a Bi-Weekly Statement within three calendar days after such Bi-Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Bi-Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; provided, that such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from cash on hand as of such date and available cash thereafter held by any Debtor in accordance with paragraph 29(c) below. Solely as it relates to the ABL Secured Parties, the Carve-Out under paragraph 29(a)(iii) above from ABL Priority Collateral shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Bi-Weekly Statements timely received by the Debtors prior to the Termination Declaration Date plus, without duplication,

(II) the lesser of (1) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date and (2) the Budgeted Cushion Amount (as defined below), and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for the period prior to the Termination Declaration Date (such amount, the "**ABL Professional Fee Carve-Out Cap**"). The "**ABL Carve-Out Reserve Amount**" shall mean an amount equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Bi-Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees forecasted in the Approved Budget but unpaid at the applicable time, plus (ii) the Post-Carve Out Trigger Notice Cap, plus (iii) the amounts contemplated under paragraph 29(a)(i) and 29(a)(ii) above, plus (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date and the two weeks succeeding such week (such amount set forth in (iv), regardless of whether such reserve is maintained, the "**Budgeted Cushion Amount**"). Together with the Borrowing Base Certificate, the Debtors shall deliver to the ABL Loan Administrative Agent, the DIP Agent, and the Initial DIP Lenders a report setting forth the ABL Carve-Out Reserve Amount as of such time, and, in setting the ABL Carve-Out Reserve, the ABL Loan Administrative Agent shall be entitled to rely upon such reports in accordance with the ABL Credit Agreement. Prior to the delivery of the first report setting forth the ABL Carve-Out Reserve Amount, the ABL Loan Administrative Agent shall calculate the ABL Carve-Out Reserve Amount by reference to the Approved Budget.

(c)     On the day on which a Carve-Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Official Committee (if any) and the ABL

Loan Administrative Agent (the "**Termination Declaration Date**"), the Carve-Out Trigger

Notice shall constitute a demand to the Debtors to utilize all cash on hand (including Cash

Collateral, subject to the limitations with respect to the ABL Loan Secured Parties and ABL

Priority Collateral set forth in paragraphs 29(a) and (b)) as of such date and any available cash

thereafter held by any Chapter 11 Debtor to fund a reserve in an amount equal to the then

accrued and unpaid amounts of the Professional Fees.

(d)    The Debtors shall deposit and hold such amounts in a segregated account

at the DIP Agent in trust to pay such then unpaid Professional Fees (the "**Pre-Carve-Out**

**Trigger Notice Reserve**") prior to any and all other claims (including the DIP Superpriority

Claim).  On the Termination Declaration Date,  after funding the Pre-Carve Out Trigger Notice

Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available

cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve-Out

Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-

Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.

(e)    All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first

to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out

(the "**Pre-Carve-Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve-Out

Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice

Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders,

unless the DIP Facility has been indefeasibly paid in full, in cash, and all commitments under the

DIP Facility have been terminated, in which case any such excess shall be paid to the Prepetition

Lenders to be paid to the Prepetition Secured Parties pursuant to the Prepetition Loan

Documents, in accordance with their rights and priorities as of the Petition Date in accordance with the Intercreditor Agreements.

(f)        All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in <u>clause (iv)</u> of the definition of Carve-Out (the "**Post-Carve-Out Amounts**"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Facility has been indefeasibly paid in full, in cash, and all commitments under the DIP Facility have been terminated, in which case, any such excess shall be paid to the Prepetition Agents to be paid to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents, in accordance with their rights and priorities as of the Petition Date in accordance with the Intercreditor Agreements.

(g)        Notwithstanding anything herein or the DIP Loan Documents to the contrary: (i) if either of the Carve-Out Reserves is not funded in full in the amounts set forth herein, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the DIP Agent or the Prepetition Agents, as applicable; (ii) following delivery of a Carve-Out Trigger Notice, the DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded or unless the proceeds of such sweep or foreclosure are applied immediately to fund the Carve-Out Reserves, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the DIP Agent or the Prepetition Agents for application in accordance with this Interim Order;

(iii) disbursements by the Debtors from the Carve-Out Reserves shall not constitute DIP Obligations under the DIP Facility or increase or reduce the balance of the DIP Superpriority Claim outstanding; (iv) the failure of the Carve-Out Reserves to satisfy, in full, the Allowed Professional Fees shall not affect or impair the priority of the Carve-Out; and (v) in no way shall any of the Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any budget or financial projection delivered in connection with this Interim Order or the DIP Facility be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by, or that may be administrative claims allowed against, the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility or in any Prepetition Secured Facilities, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(h)    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.  Any payment or reimbursement made on a final basis on or after the occurrence of the Termination Declaration Date in respect of any Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(i)    For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Loan Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facilities (including the DIP Superpriority Claim and the DIP Liens) and any and all other forms of adequate protection, liens, or other claims securing the DIP Obligations or

the Prepetition Obligations (including any liens and claims granted on account of the Adequate

Protection Liens and Adequate Protection Claims).

30.     **Limitations on the DIP Facility, the DIP Collateral, the Prepetition**

**Collateral, the Cash Collateral and the Carve-Out.**  No DIP Collateral, Prepetition Collateral,

loans under the DIP Facility, Cash Collateral, proceeds of any of the foregoing, any portion of

the Carve-Out or any other amounts may be used, directly or indirectly, by any of the Debtors,

any Official Committee or any trustee or other estate representative appointed in the Chapter 11

Cases or any Successor Cases or any other person or entity (or to pay any professional fees,

disbursements, costs or expenses incurred in connection therewith):   (a) to object to, contest,

prevent, hinder, delay or interfere with, in any way, the DIP Agent's, the DIP Lenders', the

Prepetition Agents' or the Prepetition Lenders' enforcement or realization upon any of the DIP

Collateral, Prepetition Collateral or Cash Collateral, once a DIP Termination Event or Cash

Collateral Termination Event occurs (other than with respect to rights otherwise granted herein

with respect to the DIP Remedies Notice Period or the Cash Collateral Remedies Notice Period);

(b) except to the extent expressly permitted by the terms of the DIP Loan Documents and this

Interim Order,  to use or seek to use Cash Collateral or,  to sell or otherwise dispose of DIP

Collateral or Prepetition Collateral,  in each case,  without the consent of the Required DIP

Lenders and the Required ABL Lenders; (c) except to the extent expressly permitted by the DIP

Loan Documents, to use or seek to use any insurance proceeds constituting DIP Collateral

without the consent of the Required DIP Lenders and the Required ABL Lenders; (d) except to

the extent expressly permitted by the DIP Loan Documents, to seek authorization to incur

Indebtedness (as defined in the DIP Loan Agreement) or to incur liens or security interests;  (e)

to investigate (including by way of examinations or discovery proceedings, whether formal or

informal), prepare, assert, join, commence, support or prosecute any action for any claim,

counter-claim, action, proceeding, application, motion, objection, defense, or other contested

matter seeking any order, judgment, determination or similar relief against, or adverse to the

interests of, in any capacity, against any of the Releasees with respect to any transaction,

occurrence, omission, action or other matter arising under, in connection with or related to this

Interim Order, the DIP Facility, the DIP Loan Documents, the DIP Obligations, the Prepetition

Liens, the Prepetition Obligations or the Prepetition Loan Documents or the transactions

contemplated therein or thereby, including, without limitation, (A) any claims or causes of action

arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and

causes of action, (C) any claim or cause of action with respect to the validity, enforceability,

priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations,

the DIP Superpriority Claim, the DIP Liens, the DIP Loan Documents, the Prepetition Loan

Documents, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection

Claims or the Prepetition Obligations, (D) any claim or cause of action seeking to challenge,

invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part,

the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Collateral, the

Prepetition Collateral, the Prepetition Obligations, the Term Loan Adequate Protection Claims,

and the ABL Adequate Protection Claims, (E) any action seeking to modify any of the rights,

remedies, priorities, privileges, protections and benefits granted to either the DIP Agent or the

DIP Lenders hereunder or under any of the DIP Loan Documents or the Prepetition Secured

Parties under any of the Prepetition Loan Documents (in each case, including, without limitation,

claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's, the

DIP Lenders', the Prepetition Agents' or the Prepetition Lenders' assertions, enforcements,

realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP

Loan Documents or Prepetition Loan Documents and this Interim Order and/or the Final Order

(as applicable); *provided*, *however*, that no more than $35,000 may be used for allowed fees and

expenses incurred solely by any Official Committee, if appointed, in investigating, but not

objecting to, challenging, litigating (including by way of discovery), opposing, or seeking to

subordinate or recharacterize the validity, enforceability, perfection and priority of the

Prepetition Liens, the Prepetition Obligations or the Prepetition Loan Documents during the

Challenge Period (as defined below).

31. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

(a)    The stipulations, admissions, agreements and releases contained in this Interim

Order, including, without limitation, in paragraph D of this Interim Order (collectively, the

"**Stipulations**"), shall be binding upon the Debtors and any successor thereto (including, without

limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors in the

Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.

(b)    The Stipulations shall be binding upon all other parties in interest (including

without limitation, any Official Committee, if appointed) and any other person or entity acting or

seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless

(1) an Official Committee, if any, or a party in interest (in each case, to the extent requisite

standing is obtained pursuant to an order of this Court entered prior to the expiration of the

Challenge Period (as defined below)), has timely and duly filed an adversary proceeding or

contested matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**")

by the Challenge Period (as defined below), objecting to or challenging the amount, validity,

perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents, or otherwise asserting or prosecuting any Avoidance Action or any other claim, counterclaim, cause of action, objection, contest or defense (a "**Challenge**") against any of the Prepetition Secured Parties or any of their respective affiliates, subsidiaries, officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents, and (2) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding; *provided, however,* that (i) as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date, and (ii) any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred).

(c)     If no such Challenge Proceeding is timely and properly filed prior to the expiration of the Challenge Period, then, without further notice to any person or entity or order of the Court, (a) the Stipulations shall be binding on all parties in interest (including, without limitation, any Official Committee);  (b) the Prepetition Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, offset, avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases;  (c) the Prepetition Loan Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the Debtors (subject to the Intercreditor Agreements) in the Chapter 11 Cases and any Successor Cases; (d) the Prepetition Liens shall be deemed to have

been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; (e) the Prepetition Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further claim or Challenge by any Official Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any Successor Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates; and (f) the repayment of the Senior Priming Term Loan Obligations shall be irrevocable and shall not be subject to recharacterization, disgorgement or any other Challenge under any circumstances, in each case subject to valuation of the applicable Collateral for purposes of section 506(a) and (b) of the Bankruptcy Code.

(d)    If any such Challenge Proceeding is timely and properly filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in paragraph 31(b) hereof) on any Official Committee and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

(e)    The "**Challenge Period**" shall mean the date that is (A) the earlier of (i) sixty (60) days after the entry of the Final Order and (ii) two (2) business days prior to the date of the hearing to consider confirmation of the Debtors' proposed prepackaged chapter 11 plan, or (B) such later date that has been agreed to in writing by the affected Prepetition Agent (at the direction of the Required Lenders, as defined in the Prepetition Term Loan Documents or the ABL Loan Documents, as applicable), or as ordered by the Court, for good cause shown, in each case, prior to the expiration of the deadline to commence a Challenge.

74

(f)      Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Official Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

32.    **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary.

33.    **Section 506(c) Waiver.**  In partial consideration for, among other things, the Carve-Out, the payments to be made under the Approved Budget to administer the Chapter 11 Cases, and consent to the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Prepetition Lenders upon the Prepetition Collateral, as applicable) shall be charged against any of the DIP Secured Parties, the DIP Collateral (including in respect of the Adequate Protection Liens) or any of the DIP Obligations (or, if and to the extent approved by the Court at the Final Hearing, the Prepetition Secured Parties, the Prepetition Collateral or any of the Prepetition Obligations) pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the DIP Agent, the affected DIP Lender, the affected Prepetition Agent and the affected Prepetition Lender, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

75

34.     **Section 552(b) Waiver.**  The Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, the Debtors shall seek this Court's approval at the Final Hearing that the "equities of the case" exception under section 552(b) shall not apply to the Prepetition Secured Parties or the Prepetition Obligations.  Accordingly, any valid, perfected and non-avoidable liens created by the Prepetition Loan Documents in any Prepetition Collateral shall attach with the same validity, priority, and perfection in and to any and all proceeds of such Prepetition Collateral, subject to Permitted Prior Senior Liens (if any).

35.     **No Marshaling/Application of Proceeds.**  In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with this Interim Order, the DIP Loan Documents and the Prepetition Loan Documents, as applicable.

36.     **Right to Credit Bid.**  Each of the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition Agents (at the direction of the Required Lenders, as defined in the Prepetition Term Loan Documents or the ABL Loan Documents, as applicable), shall have the unqualified right to "credit bid" up to the full amount of the DIP Obligations or the Prepetition Obligations, as applicable, in connection with any sale or other disposition of all or any portion of the DIP Collateral or the Prepetition Collateral, respectively, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, and shall automatically be deemed a "qualified bidder" with respect to any disposition of DIP Collateral or Prepetition Collateral under or pursuant to (a) section 363 of the Bankruptcy

Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code (subject in each case to the Intercreditor Agreements).  The DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition Agents (at the direction of the Required Lenders, as defined in the Prepetition Term Loan Documents or the ABL Loan Documents, as applicable), shall have the absolute right to assign, transfer, sell or otherwise dispose of its rights to credit bid, except as may be prohibited by the DIP Loan Documents or as precluded by any sale procedures order entered by the Court.

37.    **Discharge Waiver/Release.**  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties has otherwise agreed in writing, including as may be provided in the Acceptable Plan (as defined in the DIP Loan Agreement).  None of the Debtors shall propose or support any Chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of (i) the DIP Obligations in full in cash on or prior to the earlier to occur of the effective date of such Chapter 11 plan or sale, without the written consent of the DIP Agent and the Required DIP Lenders, and (ii) the ABL Loan Obligations in full in cash on or prior to the earlier to occur of the effective date of such Chapter 11 plan or sale, without the written consent of the ABL Loan Administrative Agent and the Required ABL Lenders.

38.    **Rights Preserved.**  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the rights of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders under the DIP Loan Documents, the Bankruptcy Code, the applicable Prepetition Loan Documents or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders (subject to the Intercreditor Agreements).  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

39.    **Joint and Several Liability.**  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

40.    **No Waiver by Failure to Seek Relief.**  The failure of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders to seek relief or otherwise exercise

their rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition

Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of

their respective rights hereunder, thereunder or otherwise.  No delay on the part of any party in

the exercise of any right or remedy under this Interim Order shall preclude any other or further

exercise of any such right or remedy or the exercise of any other right or remedy.  None of the

rights or remedies of any party under this Interim Order shall be deemed to have been amended,

modified, suspended or waived unless such amendment, modification, suspension or waiver is in

writing and signed by the party against whom such amendment, modification, suspension or

waiver is sought.  No consents required hereunder by any of the DIP Agent, the DIP Lenders, the

Prepetition Agents or the Prepetition Lenders shall be implied by any inaction or acquiesce by

any of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders.

41.    **Binding Effect of this Interim Order.**  Immediately upon entry by the Court,

this Interim Order shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the

Prepetition Agents and the Prepetition Lenders, and it shall become valid and binding upon the

Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders,

any and all other creditors of the Debtors, any Official Committee or other committee appointed

in the Chapter 11 Cases, any and all other parties in interest and their respective successors and

assigns, including any trustee or other fiduciary hereafter appointed as legal representative of any

of the Debtors in any of the Chapter 11 Cases or any Successor Cases, or upon dismissal of any

of the Chapter 11 Cases.

42.    **No Modification to Interim Order.**  Until and unless the DIP Obligations and

the Prepetition Obligations evidenced by the Prepetition Loan Documents have been indefeasibly

paid in full in cash, the Debtors irrevocably waive the right to seek and shall not seek or consent

to, directly or indirectly:  (a) without the prior written consent of the Required DIP Lenders and the Required Consenting Creditors (as defined in the DIP Loan Agreement), (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against any Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter 11 Cases, equal or superior to the DIP Superpriority Claim, other than the Carve-Out; (b) without the prior written consent of the Prepetition Agents (at the direction of the Required Lenders, as defined in the Prepetition Term Loan Documents or the ABL Loan Documents, as applicable) and the Required Consenting Creditors, any order authorizing the use of Cash Collateral resulting from the DIP Collateral or the Prepetition Collateral that is inconsistent with this Interim Order; (c) without the prior written consent of the Required DIP Lenders, grant any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as expressly provided in the DIP Loan Documents or this Interim Order; or (d) without the prior written consent of the applicable Prepetition Agents (at the direction of the Required Lenders, as defined in the Prepetition Term Loan Documents or the ABL Loan Documents, as applicable), the Required DIP Lenders and the Required Consenting Creditors, grant any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Term Loan Liens or the Term Loan Adequate Protection Liens other than the DIP Obligations or as specifically provided in this Interim Order.

43.    **Intercreditor Arrangements.**

(a)    Notwithstanding anything contained herein to the contrary, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders each shall be

bound by, and in all respects the DIP Facility shall be governed by, and subject to the terms and provisions of the Intercreditor Agreements as though the DIP Agents and the DIP Lenders were party thereto, and shall not be modified by entry of this Interim Order.  For purposes of the ABL Intercreditor Agreement, the DIP Credit Agreement shall be deemed to constitute a "Term Additional Agreement", the DIP Agent shall be deemed to constitute an "Other Term Loan Agent" and the "Designated Term Loan Agent" and the DIP Obligations shall be deemed to constitute "Term Loan Priority Claims" and in each case shall be subject to the terms of such Intercreditor Agreement as if the DIP Agent and the DIP Lenders were party thereto (it being understood and agreed that all Adequate Protection Liens granted herein shall constitute "Liens" of the ABL Loan Secured Parties or Term Loan Secured Parties, as applicable, for purposes of the ABL Intercreditor Agreement).

(b)    Until the DIP Obligations have been indefeasibly paid and satisfied in full in cash, (A) the DIP Agent and the DIP Lenders shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any of the Term Priority Collateral (including Term Priority Collateral on which Adequate Protection Liens have been granted hereunder); and (B) the ABL Loan Agents, the ABL Loan Lenders, the Prepetition Term Loan Agents, and the Prepetition Term Loan Lenders (x) will not exercise any right or remedies with respect to any Term Priority Collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by DIP Agent or any DIP Lenders to enforce its rights and remedies relating to the Term Priority Collateral.  Following the indefeasible payment and satisfaction in full in cash of the DIP Obligations, until the Prepetition Term Loan Obligations have been indefeasibly

paid and satisfied in full in cash, (A) subject to the Intercreditor Agreements, the Prepetition

Term Loan Agents and Prepetition Term Loan Lenders shall have the sole and exclusive right to

enforce rights, exercise remedies, and make determinations regarding the sale, release, or other

disposition of any of the Term Priority Collateral (including Term Priority Collateral on which

Adequate Protection Liens have been granted hereunder); and (B) the ABL Loan Agents and the

ABL Loan Lenders (x) will not exercise any right or remedies with respect to any Term Priority

Collateral or seek relief from the automatic stay in order to commence any action with respect to

such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with

any action or proceeding brought by Prepetition Term Loan Agents and the Prepetition Term

Loan Lenders to enforce their rights and remedies relating to the Term Priority Collateral.

(c)      Until the Prepetition ABL Loan Obligations have been indefeasibly paid

and satisfied in full in cash, (A) the ABL Loan Agents and the ABL Loan Lenders shall have the

sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding

the sale, release, or other disposition of any of the ABL Priority Collateral; and (B) the DIP

Agent, the DIP Lenders, the Prepetition Term Loan Agents and the Prepetition Term Loan

Lenders (x) will not exercise any right or remedies with respect to any ABL Priority Collateral

(including any right of setoff or any right under any lockbox or control agreement with respect to

deposit accounts or securities accounts) or seek relief from the automatic stay in order to

commence any action with respect to such rights and remedies, and (y) will not contest, protest

or object to or otherwise interfere with any action or proceeding brought by the ABL Loan

Agents or any ABL Loan Lender to enforce its rights and remedies relating to the ABL Priority

Collateral.

(d)      For the avoidance of doubt, (x) absent the prior written consent of the Required ABL Lenders, in no event shall the security interests granted to the DIP Secured Parties or the Prepetition Term Loan Secured Parties hereunder (including Adequate Protection Liens) on ABL Priority Collateral be senior to, or *pari passu* with, the security interests of the ABL Loan Secured Parties thereon, and (y) absent the prior written consent of the Required Lenders (as defined in each of the Prepetition Term Loan Documents) or the Required DIP Lenders, as applicable, in no event shall the security interests granted to the ABL Loan Secured Parties hereunder on Term Priority Collateral be senior to, or *pari passu* with, the security interests of the DIP Secured Parties or the Prepetition Term Loan Secured Parties thereon.

44.      **Order Controls.**  In the event of any conflict or inconsistency between or among (a) the express terms or provisions of any of the DIP Loan Documents, the DIP Motion, any other order of the Court or any other agreement, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term of provision herein is phrased in terms of "defined in: or "as set forth in" the DIP Loan Agreement, the terms and provisions of this Interim Order shall govern and control.

45.      **Limitation of Liability.** In determining to make any loan under the DIP Loan Agreement or permitting the use of Cash Collateral pursuant to this Interim Order, the DIP Loan Documents or the Prepetition Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the DIP Loan Parties to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the DIP Loan Parties (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute.  Furthermore, nothing in this

Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the DIP Loan Parties.

46.    **Survival.**  The provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Chapter 11 Cases, or (d) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, following dismissal of any of the Chapter 11 Cases, or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Obligations, all of the Prepetition Obligations have been indefeasibly paid in full in cash (or, in respect of outstanding letters of credit, cash collateralized).  The DIP Protections (defined below), as well as the terms and provisions concerning the indemnification of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, shall continue in

any of the Chapter 11 Cases following dismissal of any of the Chapter 11 Cases, termination of the provisions of this Interim Order, and/or the indefeasible payment in full of the DIP Obligations.

47. **Dismissal.** If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) the rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Claims (collectively, the "**DIP Protections**"), shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash (and that all DIP Protections and the Prepetition Secured Parties' adequate protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' adequate protection.

48. **Entry of this Interim Order/Waiver of Applicable Stay.** The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of the Court maintained in regard to the Chapter 11 Cases. This Interim Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

49. **Notice of Entry of this Interim Order.** The Debtors' counsel shall serve a copy of this Interim Order or a suitable notice respecting same on all of the following parties: (a) the United States Trustee for the Southern District of New York, Attn.: Richard C. Morrissey, Esq.;

(b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis);
(c) the ABL Loan Agents; (d) the Senior Priming Term Loan Agent; (e) the Priming Term Loan
Agent; (f) the Junior Term Loan Agent; (g) counsel to the ABL Loan Agents, Senior Priming
Term Loan Agent, Priming Term Loan Agent, and Junior Term Loan Agent, Cravath, Swaine &
Moore LLP, 825 Eighth Avenue, New York, New York 10019, Attn.:  Paul H. Zumbro, George
E. Zobitz, and Sarah Rosen; (h) counsel to the Ad Hoc Committee, Stroock & Stroock & Lavan
LLP, 180 Maiden Lane, New York, New York 10038, Attn.:  Kristopher Hansen, Jonathan
Canfield, Erez E. Gilad, and Gabriel Sasson; (i) MacAndrews & Forbes Media Group, Inc.;
(j) counsel to MacAndrews & Forbes Media Group, Inc., Skadden, Arps, Slate, Meagher & Flom
LLP, Four Times Square, New York, New York 10036, Attn:  Shana Elberg and Mark
McDermott; (k) the United States Attorney's Office for the Southern District of New York;
(l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission;
(n) the Environmental Protection Agency and all similar state environmental agencies;
(o) attorneys general in the states where the Debtors conduct their business operations; (p) any
party that has requested notice pursuant to Bankruptcy Rule 2002; and (q) as otherwise required
by the Case Management Order.

50.    **Final Hearing.**  The Final Hearing shall take place on October 24, 2019, at
10:00 a.m. New York time, and parties shall have until October 21, 2019 at 5:00 p.m. New York
time, to file an objection if necessary and serve such objection on the parties set forth in
paragraph 49.  Any objections by creditors or any other party-in-interest to the DIP Motion or
any of the provisions of this Interim Order shall be deemed waived unless filed and received in
accordance with the foregoing on or before the close of business on such date.  In the event the
Court modifies any of the provisions of this Interim Order or other documents following the

Final Hearing, such modifications shall not affect the rights and priorities of the DIP Agent and the DIP Lenders pursuant to this Interim Order with respect to the DIP Collateral and any portion of the DIP Facility that arises, or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically modified pursuant to the Final Hearing.

51.   ***Nunc Pro Tunc Effect of this Interim Order.***   The Court having granted the relief contained herein at the Interim Hearing on the Petition Date, this Interim Order shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) and 7062 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

52.   **Submission of Jurisdiction.**   The non-Debtor DIP Loan Parties hereby submit themselves to the jurisdiction of the Court to resolve any and all disputes regarding the DIP Loan Documents and this Interim Order, and agree to be bound by this Court's decisions with regard to any such disputes or orders.  The DIP Loan Parties are hereby authorized to grant liens and claims to the DIP Secured Parties and the Prepetition Secured Parties, which liens and claims (subject to paragraph 31 shall not be subject to any claim or cause of action, defense, subordination (whether equitable, contractual or otherwise), set off, recoupment, disallowance, disgorgement, recharacterization, impairment or any other challenge of any kind or nature whatsoever.  To the extent permitted by applicable law, the Debtors shall cause any controlled non-Debtor affiliates not to take any actions seeking to avoid any transfers made, or obligations incurred, in furtherance of the transactions contemplated by the DIP Loan Documents.

87

53.    **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Interim Order.

Dated:  October 7, 2019
          White Plains, New York

/s/ Robert D. Drain_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**Annex A**

| ABL Priority Collateral | Term Priority Collateral |
|---|---|
| 1. ABL Adequate Protection Liens | 1. DIP Liens |
| 2. Prepetition ABL Loan Liens | 2. Term Loan Adequate Protection Liens held by Senior Priming Term Loan Secured Parties |
| 3. DIP Liens | 3. Term Loan Adequate Protection Liens held by Priming Term Loan Secured Parties |
| 4. Term Loan Adequate Protection Liens held by Senior Priming Term Loan Secured Parties | 4. Term Loan Adequate Protection Liens held by Junior Term Loan Secured Parties |
| 5. Term Loan Adequate Protection Liens held by Priming Term Loan Secured Parties | 5. Prepetition Term Loan Liens |
| 6. Term Loan Adequate Protection Liens held by Junior Term Loan Secured Parties | 6. ABL Adequate Protection Liens |
| 7. Prepetition Term Loan Liens | 7. Prepetition ABL Loan Liens |